HILTON HOTELS CORPORATION, a Delaware Corporation, Appellant/Cross-Respondent, v. BUTCH LEWIS PRODUCTIONS, INC., BUTCH LEWIS, MICHAEL SPINKS, Respondents/Cross-Appellants, DYNAMIC DUO, INC., DENNIS RAPPAPORT and GERRY COONEY, Respondents.

No. 20458

April 3, 1991                                808 P.2d 919

[Rehearing denied August 28, 1991]

*Lionel Sawyer & Collins* and *Stephen L. Morris,* Las Vegas, for Appellant/Cross-Respondent.

*Schreck, Jones, Bernard, Woloson & Godfrey,* Las Vegas, for Respondents/Cross-Appellants.

*Profeta & Eisenstein,* New York, New York, for Respondents/Cross-Appellants Lewis and Spinks.

*Jones, Jones, Close & Brown* and *Kirk B. Lenhard,* Las Vegas, for Respondent Cooney.

*Herbert Sachs,* Las Vegas, for Respondent Rappaport.

# OPINION

By the Court, SPRINGER, J.:

This litigation arises out of a written contract between Hilton and Dynamic Duo, Inc., a Nevada corporation formed by prize-fight promoters Butch Lewis and Don King. The Dynamic Duo corporation was formed for the purpose of exhibiting at the Hilton Hotel the last four contests in a series of professional prize-fights (called the "Unification Series" because the series was designed to select one champion from among those recognized by three world boxing organizations). The Unification Series was intended to lead to the selection of an undisputed heavyweight champion of the world; and the mentioned last four prize-fights, the subject of the contract in this case, were to be exhibited at the Las Vegas Hilton.

At the time of executing the contract, Michael Spinks was the heavyweight champion recognized by the International Boxing Federation (IBF); Hilton claims throughout that the parties to the contract intended that champion Spinks would be available as the IBF champion contestant in the four Hilton events covered by the contract. The written contract did not, however, specify that Spinks himself would be a contestant in the Hilton events.[1] As matters turned out, Spinks forfeited his IBF championship before the time of the final Hilton event, called the "Ultimate Unification Bout." Spinks thereby became ineligible to fight in the series. The Hilton position is that, even if it were not expressly provided in the written contract, the true agreement of the parties was that Spinks was to be the active IBF contestant in the four Hilton events. Hilton also claims that Dynamic Duo and its agents deliberately induced the forfeiture of Spinks' IBF championship, thereby intentionally defeating the expectations of the contracting parties and Hilton's rights with regard to the participation by Spinks in the series. Hilton sued Dynamic Duo, promoters Butch Lewis and Don King, and the other respondents named above. The law suit included claims for breach of contract, civil conspiracy and intentional interference with contractual relations. A jury found in favor of the defendants on all

claims, and judgment was entered in favor of the defendants and against Hilton. Hilton then filed a motion for a new trial, which the district court denied. Hilton appeals from the judgment and the order denying a new trial.

As grounds for reversal Hilton claims that certain "jury tampering" prevented the conduct of a fair trial, that the trial court erred in not granting Hilton a new trial and that the trial court erred in refusing to admit certain evidence either by way of rebuttal or by permitting Hilton to re-open its case-in-chief.

We find no merit in Hilton's claims of error relating to jury tampering or to the trial court's denial of a new trial. We do, however, conclude that it was error for the trial court to exclude evidence offered by Hilton, in the form of rebuttal, that Butch Lewis had told the chairman of the Nevada Boxing Commission that he (Lewis) was going to withdraw Spinks from the Unification Series in order to make more money than could be made in the Unification Series. Evidence that Butch Lewis had intended to take Spinks out of the Hilton events was vital to the determination of the good faith of Lewis and Dynamic Duo, a matter put in issue by the court's instruction on breach of the implied covenant of good faith and fair dealing.

### Jury Tampering

Although Hilton devotes most of its attention in this appeal to the prejudice claimed to have resulted from jury misconduct and from claimed "tampering" on the part of one of the respondents, we are constrained to agree with the trial judge who concluded that Hilton was not substantially prejudiced. There are a number

---

[1]The opening paragraph of the contract's recital does indicate the intent to have Spinks in the first event and reads as follows:

> WHEREAS, Duo desires to promote a series of professional boxing events at the Las Vegas Hilton, in Las Vegas, Nevada as follows: on or about September, 1986, an IBF Championship match between Michael Spinks and an opponent ranked in IBF Top Twelve to be named ("First Event"); on or about December, 1986, a WBC Championship Match between Trevor Berbick and an opponent ranked in the WBC top ten ("Second Event"), and Duo will use its best efforts to have Mike Tyson as said opponent; on or about March, 1987, the WBA-WBC Unification Bout ("Third Event"); on or about May, 1987, the Ultimate Unification Bout (IBF, WBA, WBC) ("Fourth Event"). . . .

Dynamic Duo's specific obligation with respect to producing the boxers was then set out in the body of the contract, with no mention of names, as follows:

> (1) Duo agrees to provide the services of all the boxers appearing in each Event, including the services of the Main Events fighters for promotional purposes.

of factual issues relating to this claim of error that have been resolved by the trial judge well within the limits of his judicial discretion. Although there are some disturbing aspects relating to Hilton's claims in this regard, they appear to have been dealt with reasonably and responsibly by the trial judge. We decline to reverse the judgment against Hilton based on any alleged error on the part of the trial judge with respect to the regularity of the jury's deliberations in this case.

### Trial Court's Refusal to Grant a New Trial

The only claim relating to the trial court's refusal to grant a new trial which we see as requiring discussion in this appeal is Hilton's contention that the trial court erred in the manner in which it instructed the jury on the law relating to breach of contract. We conclude that the trial court instructed the jury properly in this regard.

The written contract is far from being a model of clarity. Dynamic Duo insists throughout this appeal that, if Hilton had wished to obligate Dynamic Duo to have Michael Spinks fight in all of the Hilton events, it should have included a provision to this effect in the written contract. It did not. From the jury's verdict we must conclude that the jury did not believe that the parties had expressly or impliedly agreed that Dynamic Duo was contractually obligated to produce Michael Spinks as a contestant in the four prize-fights that were covered by the contract.

Hilton argues in its opening brief that had the jury been properly instructed, "the outcome of the trial may have been different." This contention is unpersuasive because the trial court instructed the jury correctly and in terms that covered quite adequately the position taken by Hilton in this case, which, briefly put, is this: Even if Dynamic Duo did not expressly agree to provide Spinks in the Hilton events, it impliedly so agreed and violated this implied agreement by failing to produce Spinks.

To advance its position that the true agreement of the parties was that Spinks himself must be the IBF champion who was going to fight under the terms of the contract, Hilton offered proposed instruction "P-1," which stated that a "breach may occur with regard to either an express or implied provision of the contract." The proposed instruction then went on to read that an "implied provision is one that is recognized by the parties to exist and bind them in their actions despite the fact that it was not specifically spelled out or agreed to by the parties to the contract." The trial court refused to give this instruction; but, as pointed out below, the subject of Hilton's requested instruction was covered by other instructions of the court.

The quoted proposed instruction does offer a broad interpretation of contract law that is consistent with modern contract theory. Although some courts still follow traditional bargain theory and refuse to delve beyond the express terms of a written contract, the better approach[2] is for the courts to examine the circumstances surrounding the parties' agreement in order to determine the true mutual intentions of the parties. Courts today tend to be willing to look beyond the written document to find the "true understanding of the parties." Nanakuli Paving & Rock Co. v. Shell Oil Co., 664 F.2d 772, 780 (9th Cir. 1981).

We favor the above-stated approach to contract interpretation, despite Dynamic Duo's insistence that the court limit itself to the four corners of the contract.[3] The trial court followed the preferred approach to contract interpretation and took great care to instruct the jury in a manner that clearly permitted the jury to accept Hilton's vision of the contract of the parties if it chose to do so.

As indicated above, the trial court clearly and properly advised the jury of the parties' two opposing contentions: (1) Hilton's claim that the written contract should be read to mean that Spinks must participate in the Hilton events until he won or lost, and (2) Dynamic Duo's claim that it had only to produce an IBF champion, whoever that might be. The court instructed the jury that in this case it was required to determine what the intention of the parties was and that in doing so it was to determine (Instruction No. 29) "what the parties agreed to by the words used in the written contract *and all of the circumstances leading to the contract, such as negotiations and statements of the parties before the contract and the object, nature, and subject matter of the contract.*" (Emphasis supplied.) The emphasized wording

---

[2] *See* U.C.C. § 1-201(3) (1989); Restatement (Second) of Contracts § 4, comment a, 202 (1979).

[3] Dynamic Duo argues that the agreement of the parties must be expressly embodied in the written contract and that if an agreement or understanding of parties is not embodied in their *written* contract, it should not be enforced by the courts. This argument was put this way by counsel during oral argument:

> Many people enter into business agreements with hopes, expectations, desires, and all of those are important for us to recognize, but I stand here before you and have no hesitancy saying to you with all respect your honor, that when grownups—when adult people come together and put down what their agreement is in writing, that all of them are, and can be expected, to live with the disappointments that flow from the things that they hoped would happen, not happening.

clearly tells the jury that under the circumstances of this case it was not bound by the express terms of the contract and that it was free to go beyond the literal wordage of the written document. Under the court's instructions as given, the jury could have come to the conclusion that, although it was (as put in Hilton's proposed instruction) "not specifically spelled out or agreed to by the parties," the parties had in fact mutually agreed to Hilton's interpretation of the contract, namely, that Dynamic Duo must produce Spinks, not just any old IBF champion. The jury rejected this conclusion and found against Hilton.

When the trial court instructed the jury in effect that it could, if it chose, go beyond the written language in the contract and find that the parties had in fact impliedly agreed that Spinks and only Spinks was required to fight as the IBF champion, the court was as much as telling the jury that it was not bound strictly by the written terms of the contract and that it could in this case give credence to the true understandings and intentions and "justified expectations" of the parties; therefore, Hilton cannot be heard to complain about the district court's instructions in this case. The jury was given a clear opportunity to find that Hilton was correct in its contention that Dynamic Duo was bound to produce Spinks for the Hilton event; it did not so find. The only reasonable conclusion to be drawn from the verdict is that the jury believed that there was no contract obligation on the part of Dynamic Duo to produce Spinks and hence no breach of contract by Dynamic Duo. There was no error committed by the trial court with respect to the manner in which it instructed the jury relative to the breach of contract action. The trial court properly denied the motion for new trial on this ground.

### Breach of the Implied Covenant of Good Faith and Fair Dealing

Even though it has been properly judicially determined that Dynamic Duo did not breach its contract with Hilton, Hilton may still be able to recover damages for breach of the implied covenant of good faith and fair dealing that is part of every contract. Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing. This court recognized such an action in A.C. Shaw Construction v. Washoe County, 105 Nev. 913, 784 P.2d 9 (1989), in which contract damages were held to be recoverable for breach of the implied

covenant of good faith and fair dealing. Shaw Construction's claim was for contract damages, not tort damages. The *Shaw* opinion notes the difference between a tort action and contract action in good faith covenant cases, pointing out that the tort action requires a special element of reliance or fiduciary duty as was present in, for example, United States Fidelity v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975), and K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987). The tort action for breach of the covenant of good faith and fair dealing (sometimes called a "contort" because of its hybrid contract-tort nature) must not be confused with the essentially contract form of claim described in the *Shaw* case.[4]

Even though Dynamic Duo did not have a contractual duty to furnish Spinks as a contestant in the Hilton events, it did have a legal duty not to interfere with Spinks' capacity to be a contestant and effectively prevent Spinks from participating in the Hilton events. Dynamic Duo, Lewis and King, under the implied covenant of good faith and fair dealing, had a duty to promote the Hilton events in a fair manner and not to manipulate who would be or who would not be the IBF champion and so advance their own interests in a manner that would compromise Hilton's benefits under the contract. Lewis did not have the right to defeat Hilton's contract interests by deliberately causing Spinks to be stripped of the IBF title in order to benefit himself and Dynamic Duo. Dynamic Duo and Lewis had the duty to perform the obligations of the Hilton contract in good faith. If, as charged by Hilton, Lewis purposefully and intentionally had Spinks stripped of the IBF title in order to undermine the Unification Series and permit Lewis and Dynamic Duo to make more money outside the series, this conduct could be seen as a breach of the covenant of good faith and fair dealing implied in the parties' contract. Lewis' good faith relative to the Hilton-Dynamic Duo contract is a question of fact to be determined by the jury after presentation of all relevant evidence.

Hilton's action for breach of the implied covenant of good faith and fair dealing is problematical. Hilton did not specifically plead

---

[4]In *Shaw,* we remarked that "[t]he law would be incongruous if the covenant is implied in *every* contract, and yet the only remedy for breach of that covenant is if tort damages are alleged and there exists a special relationship between the tort victim and tortfeasor." 105 Nev. at 915, 784 P.2d at 10 (emphasis in original). The tort remedy is necessarily a narrow one found, for example, in insurance cases *(see United States Fidelity, supra)* and certain highly restricted wrongful discharge cases *(see K Mart Corp. v. Ponsock, supra).*

a breach of the good faith covenant.[5] Nevertheless, a claim under this theory was apparently litigated by consent of the parties. The following instruction was given, without objection and, presumably, was considered by the jury in rendering its verdicts.

> In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract. Thus, each party has the duty not to prevent or hinder performance by the other party.

When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith.[6] Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations. *See* A.C. Shaw Construction v. Washoe County, 105 Nev. 913, 784 P.2d 9 (1989); Maddaloni v. Western Mass. Bus Lines, Inc., 438 N.E.2d 351 (Mass. 1982).

The jury was correctly instructed that Dynamic Duo impliedly agreed (in addition to what it might have been obligated to do under the contract) "not to do anything to destroy or injure the right of [Hilton] to receive the benefits of the contract." The question is whether Hilton has made a prima facie case under which it can recover for failure on the part of Dynamic Duo to act in good faith with respect to the contract of the parties. It appears that it has. Having made such a case, Hilton was surely prejudiced by its not having the advantage of the direct testimony relating to Lewis' comment about his expressed intention to take Spinks out of the Hilton series.

---

[5] In its complaint, Hilton alleges that: "[Dynamic Duo] breached their obligations to Hilton under the Hilton agreement." A cause of action for breach of the implied covenant could possibly be derived from this language; but there is no special pleading of an implied covenant cause of action.

[6] A good, illustrative example of a claim for contract damages for breach of the covenant of good faith and fair dealing can be seen in percentage lease cases. For example, if a lessee agrees to pay a certain percentage of gross sales receipts as rental and then deliberately alters its business in a way that reduces expected sales (say, by diverting business to another store for the sole purpose of bringing down the rental), the lessee would not be acting in good faith. In such a case the lessee would be abiding with the literal terms of the contract but could still be liable for losses resulting from breach of the covenant of good faith. *See* Burton, *Breach of Contract, and the Common Law Duty to Perform in Good Faith,* 94 Har.L.Rev. 369, 384-85 (1980).

It cannot be denied that Spinks' not fighting in the Hilton events was injurious to Hilton and destructive of its right "to receive the benefits of the contract." Even though Dynamic Duo was not contractually bound to have Spinks fight at the Hilton, it had the duty not to "injure" Hilton by purposely causing Spinks to forfeit his IBF championship and thus keep him out of the Hilton events; and Hilton had the right to recover benefits which, although not spelled out in the contract, would have been enjoyed by Hilton had it not been for the claimed perfidious actions by Lewis as an agent of Dynamic Duo. Bad faith on the part of Lewis and others could have deprived Hilton of benefits it would have received had it not been for Lewis' pulling Spinks out of the Unification Series so as to make "big money" elsewhere. Proof of what Lewis said and did in this regard is critical to the prosecution of this aspect of Hilton's case.

The evidence introduced at trial relating to Lewis' failure to deal fairly with Hilton consisted entirely of news stories quoting Lewis.[7] While these news stories indicate that Lewis was eager to take the credit for making the Spinks-Tyson match-up worth much more to the fighters than it would have been under the Unification Series, they do not clearly show that Lewis purpose-fully had Spinks stripped of his title in order to create the "big pay day." The only newspaper story introduced at trial which was written prior to its becoming obvious that the eventual match-up would be worth more money than the Unification Series seems to indicate that Lewis intended to stay in the Unification Series even

---

[7]In one newspaper article, prior to Spinks' fight against Steffen Tangstad ("first event") in September of 1986, Lewis is quoted as saying that he had options which included having Spinks fight Gerry Cooney that year after the Tangstad fight. That article also includes the contrary indication of Lewis' apparent intention to remain in the Unification Series. He is reported to have said that the Ultimate Unification Bout "will not be until at least April, having us off seven months." (Trial Exhibit 101, Smith, *Spinks Is Satisfied to Stay in Shadows*, Chicago Tribune, Sept. 7, 1986.) In another article, just prior to the Spinks-Tyson fight in 1988, Lewis, referring to the suit by HBO against him for pulling out of the Unification Series, is quoted as saying, "Everyone should be thanking me. Last year this fight would have been for $2 million each. Now Tyson's getting at least $20 million and we're getting $13.5 million. Maybe they didn't have to build a statue for me, but they don't need to sue me." (Trial Exhibit 127, Smith, *If Tyson Loses Crown to Spinks, HBO Loses, Too*, Chicago Tribune, June 12, 1988.) Finally, in an article written just after the "Ultimate Unification Bout" between Tyson and Tony Tucker, Lewis again takes credit for the eventual windfall, saying, "I took a promotion that in December would have paid each fighter $2 million apiece. Now this could be the biggest box-office event in our industry's history." (Trial Exhibit 165, Borges, *Only Spinks Can Crown Tyson*, Boston Globe, Aug. 3, 1987.) The other news stories introduced contained more of the same, with Lewis taking credit for more money being made outside of the Unification Series.

if a deal was made to have Spinks fight Cooney. It is understandable that Lewis would take credit for the "big money" after the fact, but the evidence offered during Hilton's case-in-chief does not clearly establish that Lewis intentionally subverted the Unification Series by having Spinks stripped of the IBF title. This makes the Lewis statement to the boxing commission all the more vital to Hilton's bad faith case.

On rebuttal, after both sides had presented their case at trial, Hilton sought to introduce the testimony of Duane Ford, then Chair of the Nevada Athletic Commission. Hilton's counsel indicated that Ford would testify that in September 1986, long before the Spinks-Cooney deal, he heard Lewis say that he was going to pull Spinks out of the Unification Series in order to make "big money" elsewhere. The trial court did not allow Ford to testify with respect to this, reasoning that the testimony should have been offered in Hilton's case-in-chief, that it should be excluded as rebuttal and that its prejudicial effect outweighed its probative value. This was error.

Compared to the evidence contained in the newspaper articles, the testimony by Ford of Lewis' statement of intention to withdraw Spinks was very strong; and it is hard to see how Dynamic Duo would have been prejudiced by allowing Mr. Ford to testify. Dynamic Duo would have had the opportunity to cross-examine Ford, and if Dynamic Duo had documentary or testimonial evidence that would have weakened or contradicted Ford's testimony, it could have brought that forward or asked for a delay in order to present such evidence. Dynamic Duo claimed that it was not able to deal properly with the Ford testimony because its witnesses had already been dismissed; however, Lewis was still present in court, and it does not appear from the record that some critical Dynamic Duo witness had been excused and was therefore unavailable.

The Ford testimony is really the only substantial evidence of Lewis' intent, for personal advantage, to have Spinks forfeit his IBF title. This evidence certainly was not more prejudicial than probative. It would appear, on the contrary, that it was far more probative than prejudicial. If, as counsel for Hilton claims, Hilton had no knowledge of what Lewis had told Ford until after Hilton's case-in-chief had been submitted, then Hilton should have been allowed to reopen its case in order to present this evidence. The trial court, however, had the opportunity to make judgments in this regard and to exercise its discretion. We are very reluctant to rule that the trial court abused its discretion in refusing to allow Hilton to reopen its case-in-chief; however, we do conclude that the trial court erred in refusing to allow this evidence in as rebuttal.

Dynamic Duo throughout its defense maintained a position that neither Lewis nor Dynamic Duo did anything to interrupt Spinks' IBF title. Whether or not this is true goes to the heart of Hilton's case; and Hilton, on rebuttal, should have had an opportunity to present this evidence. Because of this erroneous ruling we reverse the judgment of the trial court and remand for a new trial on Hilton's claim for breach of the implied covenant of good faith and fair dealing.

MOWBRAY, C. J., STEFFEN and YOUNG, JJ., and ZENOFF, SR. J.,[8] concur.