76 F.3d 384
 77 A.F.T.R.2d 96-905, 96-1 USTC P 50,179
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sue A. BENNETT BURNS, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-16639.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 10, 1996.*
Decided Jan. 24, 1996.
 
 Before: LAY,** CHOY, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Sue A. Bennett Burns (taxpayer) appeals the district court's grant of summary judgment in favor of the Government. Taxpayer argues that the district court erred in ruling that damages she received in a state court employment action were not on account of personal injuries or sickness, and therefore not excludable from gross income under 26 U.S.C. § 104(a)(2). We affirm.
 
 Factual and Procedural History
 
 3
 On June 6, 1986, taxpayer commenced a civil lawsuit against her former employer, Valley Bank of Nevada, in Nevada state court. Taxpayer's lawsuit asserted four claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) violation of public policy mandated by statute.
 
 
 4
 Taxpayer alleged that she was employed pursuant to a written contract terminable only for cause. Taxpayer claimed that Valley Bank breached the employment contract when it terminated her employment without cause on January 17, 1986. During discovery, taxpayer explained her damages as: "Lost wages, compensation and fringe benefits; lost opportunity for future advancement within the company and the attendant pecuniary rewards."
 
 
 5
 On February 26, 1987, taxpayer's attorney in the employment action sent a letter to Valley Bank offering to settle her claim:
 
 
 6
 Ms. Bennett will agree to dismiss the Complaint and release Valley Bank of Nevada from any and all claims arising from her employment with the company upon payment to her of the sum of thirty thousand dollars ($30,000.00). This sum represents approximately one year's salary (including commissions), but does not represent any amount for medical and dental benefits and it is a mere fraction of what we will seek at trial.
 
 
 7
 Less than three weeks later, on March 17, 1987, the parties settled the case for $27,500.
 
 
 8
 Valley Bank reported this payment on a Form 1099-MISC. This form is used to report business payments of $600 or more for rent, salaries, wages, premiums, compensations, and remunerations. 26 U.S.C. (I.R.C.) § 6041. Taxpayer objected to the filing of the 1099-MISC. Valley Bank responded by letters dated July 7 and July 21, 1992, that the form was properly filed because the settlement was not excludable under I.R.C. § 104(a)(2).
 
 
 9
 The IRS determined that taxpayer failed to report the $27,500 settlement as income. On December 31, 1992, taxpayer paid the $11,201 in assessed taxes and commenced a claim for a refund. After the IRS denied this claim, taxpayer commenced this action in district court. Taxpayer asserted that the settlement is excludable from gross income as damages received on account of personal injury. See I.R.C. § 104(a)(2).
 
 
 10
 The Government moved for summary judgment claiming that taxpayer's settlement was not excludable under § 104(a)(2). Taxpayer responded that the settlement was received on account of her implied covenant claim. She argued that because this claim is a tort under Nevada law, the entire settlement is excludable from gross income. On August 15, 1994, the district court granted summary judgment for the Government, reasoning:
 
 
 11
 Since plaintiff asserted only contract rights and the violation of a Nevada backwage statute in her suit against her former employer, the amount she recovered in that action is not excludable from gross income under 26 U.S.C. § 104(a)(2).
 
 
 12
 This appeal followed.
 
 Background Law
 
 13
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. id. at 441.
 
 
 14
 This appeal concerns an exclusion from gross income: "gross income does not include ... (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." I.R.C. § 104(a)(2). The term "damages received" is defined as an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104-1(c).
 
 
 15
 The United States Supreme Court recently articulated a two-pronged analysis for § 104(a)(2) cases. Commissioner v. Schleier, 115 S.Ct. 2159, 2167 (1995). First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights." Id. And second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." Id.
 
 Discussion
 
 16
 1. Taxpayer's underlying cause of action giving rise to the settlement is not based upon tort or tort type rights.
 
 
 17
 The primary characteristic of an action based upon tort type rights is the availability of compensatory remedies. Schleier, 115 S.Ct. at 2166. Compensatory remedies include damages for "pain and suffering, emotional distress, harm to reputation, or other consequential damages." Id. at 2167 (quoting United States v. Burke, 504 U.S. 229 (1992)).
 
 
 18
 Taxpayer asserted four claims in her state court action. We will analyze each claim to determine if it is based upon tort or tort type rights.
 
 
 19
 a. Taxpayer's "Contract" Claim.
 
 
 20
 Taxpayer's contract claim is not based upon tort or tort type rights because compensatory remedies are not available.
 
 
 21
 b. Taxpayer's "Implied Covenant" Claim.
 
 
 22
 Taxpayer argues that her implied covenant claim is a tort under Nevada law. The Government responds that taxpayer alleged the contractual version of this claim, and not the more restrictive tort version.
 
 
 23
 Nevada courts have recognized both a contractual and a tort-based claim for the breach of the implied covenant of good faith and fair dealing. The contractual version of the implied covenant claim arises "where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 922-23 (Nev.1991). The tort version of this claim contains an additional element of reliance or fiduciary duty. Id. at 923. "The tort remedy is necessarily a narrow one found, for example, in insurance cases and certain highly restricted wrongful discharge cases." Id. at 923 n. 4 (citations omitted).
 
 
 24
 The highly restrictive nature of the tort-based claim is illustrated by K Mart Corp. v. Ponsock in which the Nevada Supreme Court extended this tort to the employment context. 732 P.2d 1364 (Nev.1987). Ponsock, an employee of K Mart, had been hired until retirement and could be terminated only upon notice and an opportunity for correction. Ponsock worked for K Mart for nine and one-half years and was fired six months prior to the vesting of his retirement benefits. The jury found that K Mart terminated Ponsock's employment to avoid paying him retirement benefits. On the basis of these facts, the Nevada Supreme Court held:
 
 
 25
 [W]e now recognize a bad faith discharge case in this fact-specific instance of discharge by a large, nationwide employer of an employee in bad faith for the improper motive of defeating contractual retirement benefits.
 
 
 26
 Had K Mart merely breached its contract by firing Ponsock, as it did, arbitrarily and without providing him with the agreed upon protections of assistance, correction notices and a finding of continued unacceptable performance, then Ponsock would have a remedy, but only a contractual remedy. The holding of this case certainly does not imply that mere breach of an employment contract by a large and powerful employer, or any employer, gives rise to tort damages.
 
 
 27
 Id. at 1370.
 
 
 28
 Taxpayer's implied convenant claim was not based upon tort type rights because she alleged the contractual version of this action. Taxpayer's complaint lacks any allegation of the essential element of a tort-based claim--either reliance or fiduciary duty. Taxpayer alleged that Valley Bank breached the implied covenant when it: terminated her employment without just cause after approximately six months of employment, failed to pay wages and commissions in accordance with her contract, and withheld and failed to pay other monies owed to plaintiff. As taxpayer's claim does not allege the egregious conduct illustrated by the K Mart case, she was limited to contractual remedies. Therefore, her claim was not based upon tort or tort type rights.
 
 
 29
 c. Taxpayer's "Unjust Enrichment" Claim.
 
 
 30
 The proper measure of damages in an unjust enrichment case is the reasonable value of services performed. Asphalt Prods. Corp. v. All Star Ready Mix, Inc., 898 P.2d 699, 701 (Nev.1995). This claim is not tort or tort like because an unjust enrichment claim does not provide for compensatory remedies as defined in Schleier.
 
 
 31
 d. Taxpayer's "Public Policy" Claim.
 
 
 32
 Taxpayer's public policy claim was based on Nev.Rev.Stat. § 608.040 which requires an employer to pay a discharged employee back wages within three days from the date of termination. An employer who fails to pay back wages within this time period must pay the employee a penalty of no more than one month's salary. We need not decide whether the penalty provided in this statute is tort or tort like. Taxpayer admits in her brief that back wages were not owing at the time of the settlement. "It is undisputed that prior to the execution of the settlement agreement, the wage and commission claims had been resolved in favor of Valley Bank."
 
 
 33
 In conclusion, we hold that taxpayer's state court action was not based on tort or tort type rights.
 
 
 34
 2. Taxpayer did not receive damages on account of personal injuries.
 
 
 35
 Taxpayer asserts that at the time of settlement the back wage and commission claims had been resolved, and thus the entire settlement was on account of personal injuries. The Government responds convincingly that Valley Bank intended to settle economic and not personal injuries.
 
 
 36
 The settlement agreement is silent regarding the nature of the claims settled. Therefore, we must determine the nature of the claims settled on the basis of the facts and circumstances existing at the time of settlement, with the intent of the payor being the most significant factor. Kurowski v. Commissioner, 917 F.2d 1033, 1036 (7th Cir.1990); Roemer v. Commissioner, 716 F.2d 693, 697 n. 3 (9th Cir.1983). In the context of a wrongful discharge suit, economic damages are not received on account of personal injury. Schleier, 115 S.Ct. at 2164. Therefore, Valley Bank must have intended to settle non-economic personal injuries.
 
 
 37
 Taxpayer relies primarily on a letter from Valley Bank's attorney, written three years after the settlement, which states: "Ms. Bennett was paid by Valley Bank of Nevada for all sums due and owing to her for salary and commission during the period of time that she was employed by Valley Bank of Nevada." Taxpayer also relies on an affidavit, written by her attorney in the state action, stating: "I have not changed my opinion as stated within the letter that the settlement reached did not involve reimbursement of back or future wages to Ms. Bennett." Finally, taxpayer relies on her deposition testimony, in this action, where she claims: "I felt that they owed it to me [the $27,500] for the mental stress that they put me through."
 
 
 38
 We hold that Valley Bank intended to settle economic and not personal injuries. We must review the facts as they existed at the time of settlement because the critical inquiry is the intent of the payor. Taxpayer's complaint in the state court action alleged the following damages: (1) lost past and future income, (2) lost insurance and pension benefits, (3) punitive damages, and (4) all other civil damages as provided by law. During discovery in the state action, taxpayer explained her damages as "lost wages, compensation and fringe benefits; lost opportunity for future advancement within the company and the attendant pecuniary rewards."
 
 
 39
 On February 26, 1987 taxpayer's attorney offered to settle the state action:
 
 
 40
 Ms. Bennett will agree to dismiss the Complaint and release Valley Bank of Nevada from any and all claims arising from her employment with the company upon payment to her of the sum of thirty thousand dollars ($30,000.00). This sum represents approximately one year's salary (including commissions), but does not represent any amount for medical and dental benefits and it is a mere fraction of what we will seek at trial.
 
 
 41
 (emphasis added). Taxpayer's action was settled three weeks later.
 
 
 42
 Thereafter, Valley Bank reported the $27,500 payment on a Form 1099-MISC. Taxpayer objected to the filing of this form, but Valley Bank refused to withdraw it, stating: "Based upon review of the law and like court cases, we believe all or part of the settlement is taxable."
 
 
 43
 We hold that taxpayer did not receive damages on account of personal injuries because all of the evidence at the time of settlement indicates that taxpayer asserted, and Valley Bank intended to settle, only economic damages.
 
 
 44
 Taxpayer's reliance on the June 7, 1990 letter from Valley Bank's attorney is not persuasive. This letter does not state that all economic claims were resolved before settlement. Rather, it states that wage and commission claims "during the period" of employment were resolved. Therefore, other economic claims such as future income, lost insurance, and lost pension benefits were disputed at the time of settlement.
 
 
 45
 Taxpayer's reliance on the affidavit of her attorney in the state action is also not persuasive. Again, this affidavit only addresses "reimbursement of back or future wages." It does not address damages for lost insurance or pension benefits. Moreover, the relevant inquiry is not the belief of taxpayer's attorney. Rather, the dispositive issue is the intent of the Valley Bank. Taxpayer's deposition testimony in this action fails to create a genuine issue of material fact for the same reason.
 
 Conclusion
 
 46
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3