An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

TOWN CENTER DRIVE AND 215, LLC,
A NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
BANK OF AMERICA, N.A., A
NATIONAL BANKING ASSOCIATION,
Respondent.

No. 60672

**FILED**

JUL 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying injunctive relief in a construction loan dispute. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

Appellant Town Center Drive and 215, LLC, entered into a construction loan agreement with Respondent Bank of America in order to finance the construction of an office building. After the construction loan was already in place, Town Center and Bank of America began to discuss permanent financing for the project, during which Town Center expressed concerns about rising interest rates. After attending a presentation by bank representatives, and discussing the matter with his Chief Financial Officer, Town Center's managing member, Robert Black, Sr., decided to enter into a treasury lock agreement (also referred to as a derivative or a swap agreement) in anticipation of a future permanent loan.

A treasury lock agreement is a device borrowers can use to protect themselves from future rising interest rates. The treasury lock agreement sets an interest rate and an end date. If interest rates rise over the period of the agreement such that they are higher than the designated

SUPREME COURT
OF
NEVADA

(O) 1947A

14-24744

rate at the time the agreement is entered into, then the borrower receives a payment from the counterparty to the agreement. But, if interest rates fall below that designated rate, then the borrower has to make a payment to the counterparty. In this case, interest rates fell and, upon the agreement's end date, Town Center owed $1.7 million. Because Town Center was unable to pay the full amount, Bank of America agreed to finance a portion of the amount owed on the treasury lock by modifying the amount of Town Center's construction loan. Town Center then paid approximately $600,000 in cash to Bank of America, and the bank added the remaining $1.1 million to the construction loan by modification, thereby settling the terms of the treasury lock agreement.

After multiple extensions of the construction loan's maturity date, Bank of America refused to grant another extension because the property value had fallen below the amount of debt on the loan. And Town Center had not applied for a permanent loan because it knew it would not meet the necessary criteria. Thus, when Town Center failed to pay the balance upon the maturity date, Bank of America initiated non-judicial foreclosure procedures and filed a complaint seeking an appointment of a receiver. Town Center filed an answer to the complaint and alleged numerous counterclaims. The district court dismissed all of Town Center's counterclaims except for its claim that Bank of America breached the covenants of good faith and fair dealing during the negotiation over the treasury lock agreement. With the foreclosure sale approaching, Town Center sought a preliminary injunction to prevent the sale until its underlying claim was litigated. The district court denied the injunction. Town Center argues on appeal that the district court abused its discretion by denying its request for a preliminary injunction.

*The district court did not abuse its discretion in denying injunctive relief to Town Center*

A preliminary injunction is proper when the moving party can demonstrate that it will suffer irreparable harm for which compensatory damages would not suffice if the action complained of is not halted and that it has a reasonable likelihood of success on the merits. *See* NRS 33.010; *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 403, 215 P.3d 27, 31 (2009). A district court's denial of a preliminary injunction is reviewed for an abuse of discretion. *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). Factual determinations will be upheld unless they are "clearly erroneous or not supported by substantial evidence." *Id.* Questions of law are reviewed de novo. *Id.*

*The district court correctly determined that Town Center was not likely to succeed on the merits of its claim*

When Town Center sought injunctive relief, its only surviving counterclaim was for Bank of America's breach of the covenants of good faith and fair dealing relating to its representations about the treasury lock agreement. "An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991). "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special

circumstances that shape these expectations." *Id.* at 234, 808 P.2d at 923-24. Whether a party has acted in good faith is a question of fact. *Consol. Generator-Nevada,* 114 Nev. at 1312, 971 P.2d at 1256.

Here, the district court concluded that Town Center had not shown any bad faith by Bank of America in regard to the treasury lock agreement. We agree. Despite Town Center's contention that it was misled by representatives of Bank of America as to the nature and function of the treasury lock agreement, our review of the record reveals that evidence was presented at the preliminary injunction hearing demonstrating that Town Center was aware of the risks when it entered into the treasury lock agreement. And, as the record reflects, both parties to the transaction were sophisticated parties who had ample opportunity to understand the contract. Although Black testified that he never really understood the risks associated with a treasury lock, he admitted that, prior to entering into the contract, his Chief Financial Officer Scott Dean specifically informed him of what would occur if interest rates fell below the designated rate.[1] Furthermore, Dean testified that Bank of America advised him to conduct an independent review, either internally or with independent advisors, but that he failed to discuss the contract with or to seek advice from any independent entity or expert.

---

[1]Dean stated in a memorandum to Black that

> The hedge will be settled at the BEGINNING of the contract. On May 1, 2007, if our locked rate is higher than our perm loan rate[,] WE PAY BOFA!! If our rate is lower than the perm loan rate[,] BOFA PAYS US!! . . . In essence[,] WE ARE BETTING RATES WILL GO HIGHER. IF SO[,] THEY PAY US! IF NOT[,] WE PAY THEM!

Town Center also alleged in the district court that Bank of America representatives led it to believe that the treasury lock agreement was somehow tied to permanent financing. However, both Black and Dean admitted multiple times during the preliminary injunction hearing that no one from Bank of America ever actually promised Town Center a permanent loan. Dean also stated that Town Center never received a loan commitment letter or any other formal document from the bank regarding permanent financing, and that he knew that the treasury lock agreement would settle on its expiration date, whether or not permanent financing was obtained. Finally, Black testified that Town Center never actually requested a permanent loan because he knew that Town Center was not yet in a position to qualify for that financing given its occupancy levels.

Thus, we conclude that substantial evidence supports the district court's determination that Town Center was not likely to succeed on the merits of its claim that Bank of America failed to act in good faith.

*The district court correctly determined that Town Center failed to show irreparable harm*

The district court also determined that Town Center did not demonstrate irreparable harm because the treasury lock agreement was not related to the construction loan, and thus, any claim Town Center had regarding the treasury lock agreement could be compensated monetarily and would not affect the foreclosure. Town Center argues that the district court erred in making this determination because the treasury lock agreement was secured by the property and amounts from the treasury lock were incorporated into the construction loan.

We are unpersuaded by Town Center's argument because even if the treasury lock agreement had been secured by the property, Bank of America did not foreclose on the property when Town Center could not pay

its obligation under the treasury lock agreement. Instead, Bank of America agreed to accept a partial cash payment and to modify Town Center's existing construction loan by adding the remaining balance of $1.1 million to that loan, thereby settling and concluding the treasury lock agreement. We determine that this equated to a separate transaction—Town Center borrowed an additional $1.1 million to pay the treasury lock and secured that debt with the property. And, while Town Center disputes the validity of the treasury lock agreement, it does not dispute that it borrowed that additional money and agreed to a modification of its existing construction loan. Thus, even if Town Center succeeded on its claim for the breach of good faith and fair dealing, it would only be entitled to monetary damages and it would still be in default on the construction loan.[2] Therefore, we conclude that substantial evidence also supports the

---

[2]Town Center argues on appeal that if the treasury lock agreement is not secured by the property then amounts owing under it cannot properly be part of the amount owed under the construction loan, and thus, the notice of default has been rendered ineffective. Town Center bases this argument on NRS 107.080(2)(c)(3) (requiring a beneficiary to provide the holder of the deed of trust with an accurate written statement of the amount in default) and NRS 107.080(7)(b) (stating that a beneficiary's failure to provide that notice mandates the grant of an injunction preventing the foreclosure sale until the beneficiary complies with the statutory requirements). This raises the question of whether NRS 107.080(7)(b)'s mandate of an injunction supersedes the standard requirements for injunctive relief. However, because Town Center failed to raise this argument before the district court, we decline to consider this argument on appeal. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

district court's determination that Town Center failed to show irreparable harm.

Because the district court's determination that Town Center was not likely to succeed on the merits of its claim and failed to show irreparable harm was not clearly erroneous and was supported by substantial evidence, we further conclude that the district court did not abuse its discretion in denying injunctive relief to Town Center. *See Boulder Oaks*, 125 Nev. at 403, 215 P.3d at 31; *Nevadans for Sound Gov't*, 120 Nev. at 721, 100 P.3d at 187.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Elizabeth Goff Gonzalez, District Judge
       Ara H. Shirinian, Settlement Judge
       Black & LoBello
       Snell & Wilmer, LLP/Las Vegas
       Eighth District Court Clerk