138 Nev., Advance Opinion 31

IN THE SUPREME COURT OF THE STATE OF NEVADA

APCO CONSTRUCTION, INC., A
NEVADA CORPORATION; AND
SAFECO INSURANCE COMPANY OF
AMERICA,
Appellants,
vs.
HELIX ELECTRIC OF NEVADA, LLC,
A NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 80177

FILED

MAY 05 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment after a bench trial in a contract action. Eighth Judicial District Court, Clark County; Elizabeth Gonzalez, Judge.

*Affirmed.*

Fennemore Craig, P.C., and Christopher H. Byrd, Las Vegas; Fennemore Craig, P.C., and John Randall Jefferies, Phoenix, Arizona,
for Appellants.

Peel Brimley LLP and Cary B. Domina and Ronald J. Cox, Henderson,
for Respondent.

_____

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

22-14316

*OPINION*

By the Court, SILVER, J.:

The covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *State, Dep't of Transp. v. Eighth Judicial Dist. Court*, 133 Nev. 549, 555, 402 P.3d 677, 683 (2017) (internal quotation marks omitted). In this appeal, we consider whether the district court properly applied the covenant of good faith and fair dealing when it awarded delay damages to a subcontractor. We also, for the first time, interpret NRS 338.490 and determine whether the subcontractor waived its right to receive delay damages by signing a waiver and release to receive its retention. We conclude that the district court properly determined the covenant of good faith and fair dealing applies here, the contractor breached the covenant, and the subcontractor did not waive its delay claims under NRS 338.490.

*FACTS AND PROCEDURAL HISTORY*

The City of North Las Vegas (CNLV) contracted with appellant APCO Construction, Inc.,[1] for a construction project. Subcontractor and respondent, Helix Electric, Inc., contracted with APCO for the project's electrical work. The project was originally scheduled to be completed on January 9, 2013, but the project was not substantially completed until October 25, 2013.

After the original project completion date passed, Helix notified APCO that it reserved the right to receive payment for the additional costs incurred due to the delay. In response, APCO indicated that Helix must timely pursue reimbursement for those costs and provide all related

---

[1]We refer to appellants APCO and Safeco Insurance Company of America collectively as APCO.



documentation to APCO, so that APCO could then submit Helix's claim to CNLV. Helix thereafter sent APCO a list of delay costs totaling $72,960. Helix later submitted a revised claim for $102,000 based on the calculation of $640 per day for 32 weeks. APCO created a change order request for Helix's $102,000 delay claim and submitted it to CNLV. APCO also told Helix it was in the process of preparing a time impact analysis, which would "open the door for Helix" to present its case.

CNLV rejected the change order request because CNLV did not have a contract with Helix. APCO informed Helix it needed backup documentation to reverse CNLV's rejection but did not tell Helix that CNLV rejected the claim on the basis that CNLV did not have a contract with Helix. In fact, at trial, the CNLV construction manager testified that providing backup information would not have changed CNLV's decision "because [the information] still would be coming from a contractor that does not have a contract with the city." Moreover, CNLV expected APCO to include its subcontractors' claims in its own claim for general conditions, rather than submit the subcontractors' claims separately. On October 2, 2013, APCO settled its own $1,090,066 delay claim with CNLV for $560,724. As part of the settlement, APCO agreed to forgo any claim, present or future, that may occur on the project. The record shows APCO did not notify Helix that it had settled with CNLV or that CNLV had paid APCO's delay claim.

On October 18, 2013, Helix also billed APCO for its retention payment of $105,677 and included a conditional waiver and release upon final payment that indicated a disputed-claim amount of "zero." On November 5, 2013, APCO submitted a revised change order to CNLV seeking a total of $111,847 for Helix's delay claim, which CNLV again

SUPREME COURT
OF
NEVADA

(O) 1947A

3

rejected. On November 13, 2013, Helix submitted another claim to APCO in the amount of $26,304, accounting for the extended overhead costs for the months of September and October. APCO submitted Helix's claim to CNLV, which CNLV rejected on grounds that CNLV did not have a contract with Helix and, moreover, CNLV had already settled with APCO.

In October 2014, APCO sent a copy of a check in the amount of Helix's retention and an updated unconditional waiver for Helix to sign upon final payment. The waiver—which Helix did not sign—included the retention amount, and Helix added the delay amount to the payment line next to the retention amount. Helix did not list the delay claim as a disputed claim on the waiver, but Helix's president emailed APCO's contract manager expressing concern about Helix's delay claim. Helix's senior vice president also wrote to APCO, explaining that Helix reserved its rights to its delay claim. Helix's president also emailed a promissory note to APCO's contract manager laying out a payment plan for Helix's delay costs. Ultimately, Helix claimed APCO owed $134,724.68 for Helix's delay costs.

APCO did not pay Helix's delay costs, and Helix filed the underlying complaint. The district court ruled in favor of Helix after a three-day bench trial, finding that APCO breached the covenant of good faith and fair dealing by not including Helix's delay damages claim as part of APCO's own claim to CNLV and thereafter settling its own claim with CNLV without notifying Helix. Notably, the district court found that CNLV rejected Helix's claims because APCO did not include Helix's claim under its own claim and that APCO waived and released Helix's claim by settling with CNLV. The court further found that under NRS 338.490, the waiver Helix signed applied to retention only and not to Helix's claim for delay

damages. The district court awarded Helix $43,992.39 in delay damages and $1,960.85 in interest along with attorney fees. APCO appeals.

## DISCUSSION

The primary issue before us on appeal is whether the district court erroneously found Helix was entitled to damages. In addressing this question, we consider, first, whether Helix properly received delay damages pursuant to the covenant of good faith and fair dealing and the subcontract and, second, whether the conditional release and waiver Helix signed precludes it from receiving delay damages from APCO.

We give deference to the district court's factual findings and will uphold them so long as they are not clearly erroneous and are supported by substantial evidence. *Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008)). We review issues of statutory and contractual interpretation de novo. *Id.*

*The covenant of good faith and fair dealing allows for Helix to receive delay damages*

APCO argues that the district court erred by applying the covenant of good faith and fair dealing here because APCO and Helix's subcontract limits Helix's remedy to an extension of time and the court found that this provision was enforceable. APCO further argues that by applying the covenant of good faith and fair dealing, the district court effectively modified or superseded the subcontract's provisions and frustrated the parties' reasonable expectations under the contract for monetary damages. APCO contends that substantial evidence does not

support the district court's finding that it breached the covenant of good faith and fair dealing.[2] We disagree with APCO on all points.

We interpret contracts by "discern[ing] the intent of the contracting parties" and employing "[t]raditional rules of contract interpretation." *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015) (quoting *Davis v. Beling*, 128 Nev. 301, 321, 278 P.3d 501, 515 (2012)). If "the language of the contract is clear and unambiguous," we will enforce the contract as written. *Id.* (internal quotation marks omitted).

"[A]n implied covenant of good faith and fair dealing exists in *all* contracts." *A.C. Shaw Constr., Inc. v. Washoe County*, 105 Nev. 913, 914, 784 P.2d 9, 10 (1989). A plaintiff can recover damages for breach of the covenant of good faith and fair dealing "[e]ven if a defendant does not breach the express terms of a contract." *State, Dep't of Transp. v. Eighth Judicial Dist. Court*, 133 Nev. 549, 555, 402 P.3d 677, 683 (2017). The covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Id.* (quoting *Nelson v. Heer*, 123 Nev. 217, 226, 163 P.3d 420, 427 (2007)). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 234, 808 P.2d 919, 923

---

[2]APCO also argues that Helix failed to prove the delay increased its costs and damaged Helix and that Helix is not entitled to attorney fees. After carefully reviewing the record, we conclude substantial evidence supports the district court's finding that Helix suffered damages from the delay. And we are not persuaded by APCO's arguments against the attorney fees award.

(1991). Reasonable expectations are "determined by the various factors and special circumstances that shape these expectations." *Id.* at 234, 808 P.2d at 924.

As an initial matter, we conclude substantial evidence supports the district court's finding that APCO breached the covenant of good faith and fair dealing. When APCO settled with CNLV, APCO acted contrary to the spirit and purpose of its subcontract with Helix by keeping its claim separate from Helix's claim and failing to preserve Helix's claim where CNLV would only accept claims from APCO and not from Helix.[3] APCO entered into a settlement agreement with CNLV without Helix's knowledge and waived all claims arising from the project delay, including Helix's delay costs. Moreover, APCO misrepresented to Helix the reasons for CNLV's rejection of Helix's claim, telling Helix the rejection was due to a lack of backup information when CNLV rejected the claim because it did not have a contract with Helix. APCO also resubmitted Helix's delay claim after Helix provided APCO with more backup information despite already knowing CNLV rejected Helix's claim for a different reason. Accordingly, the district court did not err in finding APCO breached the covenant of good faith and fair dealing.

We next address whether the APCO-Helix subcontract prohibited the district court from finding APCO breached the covenant and is liable for Helix's delay damages. Courts "should not rewrite contract

---

[3]APCO's reliance on *Nelson v. Heer* is misplaced because that case dealt with a seller's duty to disclose certain conditions on the property and that duty was limited by statute. 123 Nev. 217, 227, 163 P.3d 420, 427 (2007). Here, APCO does not point to any statute that would similarly limit its duty as the contractor to take steps for its subcontractors to receive payment.

provisions that are otherwise unambiguous . . . [ ]or . . . attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations." *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 656-57, 707 P.2d 1149, 1150-51 (1985) (deciding a person in a motor vehicle accident could not recover from the motorcycle owner's homeowner insurance company where the homeowner's policy expressly excluded coverage for motor vehicle incidents).

The language in the APCO-Helix subcontract, read as a whole, supports the district court's decision. We acknowledge, as APCO points out, that under section 6.5 of the subcontract, Helix's exclusive remedy for most delays was an extension of time. Nevertheless, section 6.3 provides an exception wherein Helix may obtain extra compensation from APCO for delays if "specifically agreed to in writing by [APCO] and [CNLV] and paid for by [CNLV]." Here, Helix notified APCO that it reserved the right to receive payment for the additional costs incurred due to the delay, and in response, APCO agreed to submit Helix's claim to CNLV. But APCO did not properly submit Helix's claim to CNLV and thereby prevented Helix from receiving extra compensation under section 6.3. Further, section 6.1 of the addendum requires APCO to make available to Helix "all information . . . that affects [Helix's] ability to meet its obligations under the subcontract . . . [including] information relating to . . . delays [and] modifications to [APCO's] agreement with [CNLV] . . . ." Yet the record demonstrates that APCO misled Helix into believing CNLV's denial was based on the lack of detail in Helix's claims. Therefore, APCO performed the subcontract in a manner that was unfaithful to its purpose, and the district court did not err by applying the covenant of good faith and fair dealing.

*The conditional release and waiver Helix signed does not preclude it from receiving delay damages from APCO*

APCO argues the district court misapplied NRS 338.490 and erred by not enforcing the release and waiver Helix signed to receive its retention payment.[4] We disagree.

If the meaning of a statute is clear on its face, then this court does not look beyond the statute's language. *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). NRS 338.490 provides,

> Any release or waiver required to be provided by a contractor, subcontractor or supplier to receive a progress payment or retainage payment must be:
>
> 1. Conditional for the purpose of receiving payment and shall be deemed to become unconditional upon the receipt of the money due to the contractor, subcontractor or supplier; and
>
> 2. *Limited to claims related to the invoiced amount* of the labor, materials, equipment or supplies *that are the subject of the progress bill or retainage bill.*

(Emphases added.)

APCO does not dispute that this statute applies; instead, it argues the release, which covered the "final payment to the undersigned for all work" on the project, confirmed that no outstanding claims remained and, therefore, Helix was barred from pursuing its later claims. The plain language of NRS 338.490, however, limits any waiver or release to the claimed costs that are the subject of the progress or retainage bill, and we

---

[4]We are not persuaded by APCO's argument that Helix waived its delay claim where the record shows Helix submitted change order requests to APCO twice for its delay costs, provided more backup information for those costs upon APCO's request, and sent emails and letters to APCO confirming its intent to reserve the right to seek delay damages.

must enforce the statute as written. *See In re George J.*, 128 Nev. 345, 349, 279 P.3d 187, 190 (2012). Here, the subject of the release is the retention payment for the work completed prior to the delay costs, and the release is therefore limited to that payment. Moreover, Helix has never received its delay costs, so it follows that APCO never withheld a retention amount from those costs and Helix could therefore pursue a claim for those delay costs that were not contemplated by the waiver. Accordingly, we conclude that under NRS 338.490, the waiver Helix signed does not preclude it from receiving delay damages from APCO.[5]

## CONCLUSION

We affirm the district court's decision. The covenant of good faith and fair dealing applies, and APCO breached the covenant of good faith and fair dealing by misrepresenting the reasons for CNLV's rejection of Helix's delay costs and by settling with CNLV, which effectively waived Helix's claims. And Helix did not waive its delay claims by signing a conditional waiver because NRS 338.490 limits that waiver to claims concerning the subject of the retainage bill.

_____, J.
Silver

We concur:

_____, J.
Cadish

_____, J.
Pickering

_____

[5]We have carefully considered the remaining arguments and conclude they are without merit.

SUPREME COURT
OF
NEVADA

(O) 1947A