UNITED FIRE INSURANCE COMPANY, AND UNITED DIVERSIFIED CORPORATION, APPELLANTS, v. KENNETH McCLELLAND AND JONI McCLELLAND, RESPONDENTS.

No. 18705

September 6, 1989                                          780 P.2d 193

*Vargas & Bartlett* and *Nicholas F. Frey; Lionel Sawyer & Collins* and *M. Kristina Pickering,* Reno, for Appellants.

*Hibbs, Roberts, Lemons, Grundy and Eisenberg,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This appeal arose from an action brought against appellants United Fire Insurance Company and its parent, United Diversified Corporation, due to United Fire's refusal to pay Kenneth McClelland's claims for medical treatment. A jury found appellants liable for bad faith and awarded respondents Kenneth and Joni McClelland compensatory and punitive damages.

### FACTS

Kenneth received group accident and health insurance as a participant in the American Marketers Association Group Insurance Plan (AMA plan). United Fire issued the master policy of insurance to a trustee for the AMA plan, a Mississippi bank. Some 6,724 people were insured under this policy.

In November 1982, the California insurance commissioner issued a cease and desist order to United Fire requiring that it stop doing all business in California effective January 1, 1983. Two months later, the Nevada insurance commissioner served a similar order on United Fire.

On December 30, 1982, one of United Fire's vice presidents sent a letter to all the insureds under the AMA plan notifying them of a 23.5 percent increase in premiums and cautioning them not to "change or drop" their protection. This letter mentioned nothing about the cease and desist order or about United Fire's financial difficulties.

United Fire and California Life Insurance Company executed a reinsurance and assumption agreement (Agreement) on January 18, 1983. This Agreement provided that, as of January 1, 1983, California Life acquired all United Fire's rights and assumed all

United Fire's obligations under the "policies." The "policies" included the AMA plan.

On January 24, 1983, United Fire's president wrote to all of the insureds under the AMA plan informing them that California Life had assumed United Fire's liability under the AMA policy and stating that insureds would receive an assumption certificate from California Life. California Life never sent the promised assumption certificate.

The McClellands continued to receive correspondence from United Fire through May 1983. On June 30, 1983, California Life mailed a letter to the participants in the AMA plan telling them that the coverage under the group plan would be cancelled, effective October 1, 1983. Two weeks later, California Life sent a second letter, changing the cancellation date to November 1, 1983. However, the policy expressly stated that it may be terminated upon the premium due date if written notice is given the policyholder, the Mississippi bank, at least 120 days in advance of such premium date. California Life never notified the policyholder of the cancellation.

At the time of the Agreement, Kenneth was healthy and insurable. However, in March 1983, doctors diagnosed Kenneth as having an altered renal function with stones in both kidneys. Kenneth had several operations and hospitalizations to remove stones, cure infections, and implant and replace a tube from the bladder to the kidney.

Once the dispute over insurance arose, Kenneth delayed several times in receiving hospital treatment because of a lack of money. On one occasion, Kenneth refused to go to the hospital when his infection was particularly severe. When he finally did get to the hospital, it took seven days before the infection could be controlled. Kenneth's physician testified that the McClellands seemed emotionally distraught due to the amount of the medical bills which accumulated with no means of paying them.

The McClellands filed suit against appellants and California Life. Just before trial commenced, California Life agreed to pay McClellands their contract benefits under the policy. The McClellands proceeded to trial against appellants. A jury awarded Kenneth compensatory damages of $143,000, Joni compensatory damages of $73,000, and $500,000 in punitive damages.

Appellants assert that as a matter of law they owed the McClellands no insurance benefits because United Fire and California Life executed the Agreement which substituted California Life as insurer in United Fire's place. Moreover, appellants claim that expert testimony improperly invaded the jury's province on all

key issues, and that no bad faith liability existed since any obligation they had to the McClellands presented unresolved questions of fact and law. Next, appellants argue that the punitive damages award was not supported by either the facts or the law. Finally, appellants contend that the trial court erred by submitting Joni's claims to the jury. We affirm the district court's decision except for the portion awarding Joni compensatory damages.

## NOVATION

Appellants contend that they owed the McClellands no insurance benefits because the policy was transferred to California Life, with the McClellands' knowledge and consent, before the claims giving rise to this suit arose. Thus, they argue that the evidence of novation entitled them to judgment as a matter of law.

A novation consists of four elements: (1) there must be an existing valid contract; (2) all parties must agree to a new contract; (3) the new contract must extinguish the old contract; and (4) the new contract must be valid. Boswell v. Lyon, 401 N:E.2d 735, 741 (Ind.Ct.App. 1980). If all four elements exist, a novation occurred. *Id.* Additionally, the intent of all parties to cause a novation must be clear. Pink v. Busch, 100 Nev. 684, 690, 691 P.2d 456, 460 (1984). However, consent to novation may be implied from the circumstances of the transaction and by the subsequent conduct of the parties. Sans Souci v. Div. of Fla. Land Sales, 448 So.2d 1116, 1121 (Fla.Dist.Ct.App. 1984).

Novation is a question of law only when the agreement and consent of the parties are unequivocal. Downing v. Dial, 426 N.E.2d 416, 419 (Ind.Ct.App. 1981). Whether a novation occurred is a question of fact if the evidence is such that reasonable persons can draw more than one conclusion. Herb Hill Ins., Inc. v. Radtke, 380 N.W.2d 651, 654 (N.D. 1986).

Appellants rely on the January 24, 1983 letter which United Fire sent to its insureds under the AMA plan to prove that a novation occurred. According to United Fire, the letter unmistakably indicated that United Fire would have no liability for claims incurred after the effective date, January 1, 1983. Appellants argue that the McClellands' failure to submit the disputed medical bills to United Fire confirms that the McClellands derived the same understanding from the letter.

We conclude that a novation did not occur as a matter of law due to questions regarding the McClellands' alleged consent.

Therefore, the district court properly submitted the issue to the jury. Moreover, the party asserting novation has the burden of proving all the essentials of novation by clear and convincing evidence. Miami Nat. Bank v. Forecast Const. Corp., 366 So.2d 1202, 1204 (Fla.Dist.Ct.App. 1979). Thus, we further conclude that substantial evidence supports the jury's determination that appellants failed to establish, by clear and convincing evidence, all the facts necessary to prove a novation.

This court will not overturn a jury verdict when substantial evidence supports it. General Motors Corp. v. Reagle, 102 Nev. 8, 9-10, 714 P.2d 176, 177 (1986). We will look at the facts from the viewpoint of the prevailing party, assuming that the jury believed all evidence favorable to that party and that the jury drew all reasonable inferences in its favor. *Id.* at 9, 714 P.2d at 176.

In the instant case, the McClellands claim that had they known that the California insurance commissioner had prohibited United Fire from writing insurance in California and that California Life and its owner had questionable reputations, they would have sought other insurance. Thus, the jury could have found that the McClellands' acquiescence to California Life as their insurer did not constitute consent when they knew nothing of United Fire's ejection from California and Nevada or the questionable status of California Life.

### EXPERT TESTIMONY

Appellants maintain that Eugene Leverty, an attorney and former deputy insurance commissioner for the State of Nevada, improperly testified as to legal conclusions, each of which invaded the province of the jury. They argue that the district court committed reversible error in admitting Leverty's opinions concerning reinsurance, bad faith, and punitive damages.

A clear abuse of discretion must exist in order for this court to disturb the district court's admission of expert testimony. Allen v. State, 99 Nev. 485, 487, 665 P.2d 238, 239 (1983). However, courts should exclude testimonial opinion on the state of the law. Ashton v. Ashton, 733 P.2d 147, 153 (Utah 1987). An attorney's opinion on the applicable law does not assist the jury, duty-bound to apply the law as stated by the court, in understanding the evidence or in determining a fact in issue. *Id.*

Appellants contend that the following testimony of Leverty was so improperly prejudicial that we should reverse the verdict and

judgment on this basis alone. Counsel elicited testimony from Leverty, over objection, that "United Fire is the insurance company before and after this—after a reinsurance agreement. All it has done is transferred a portion of its risk to California Life. But California Life's responsibility is to United Fire. United Fire's responsibility is to the policy holders." On rebuttal, Leverty further testified, without objection, that United Fire breached its duty to the McClellands, was guilty of bad faith, and was liable for punitive damages.[1]

Both counsel had previously agreed with Judge Whitehead that Leverty could express a legal opinion on matters not covered by the court's instructions. Since the district court did not instruct on the effect of the Agreement, the Leverty opinions regarding reinsurance fell within one of the proper areas of testimony.

We also conclude that United Fire's counsel opened the door to Leverty's rebuttal testimony. During his cross-examination of Leverty, United Fire's counsel read from Leverty's deposition and brought out that at the time of the deposition, Leverty had not seen any conduct on the part of appellant that warranted punitive damages. Consequently, rehabilitation and a showing of Leverty's present opinion became necessary only after cross-examination. Therefore, the district court did not err in admitting Leverty's testimony that United Fire breached its duty and was liable for bad faith and punitive damages.

### BAD FAITH LIABILITY

Appellants assert that the district court erred in giving a bad faith instruction to the jury since they were entitled to judgment, as a matter of law, on the McClellands' bad faith claims. They maintain that the disputed novation should relieve them of any liability for bad faith.

However, a jury question on insurer's bad faith arises when

---

[1]On rebuttal, Leverty testified as follows:

My opinion is that United Fire was responsible to the policyholder's [sic] and, when the complaint was filed, it knew that it should pay that claim. That it was outstanding because they were the responsible company and it failed to process and give the claim information give the process they waited for—they—it's shown that they didn't pay the claim, they didn't make any attempts to pay it. They didn't make any attempts to submit the claim information forms to them so they could get the claim and, therefore, that they have failed it. They breached their duty of a reasonable company doing business, becoming aware if putting these people through hardship and I think that—that they are guilty of the bad faith and punitive damages.

relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of insurer's conduct. Duckett v. Allstate Ins. Co., 606 F.Supp. 728, 731 (W.D.Okla. 1985). Moreover, as previously stated, we will not overturn a jury verdict supported by substantial evidence. General Motors Corp. v. Reagle, 102 Nev. 8, 9-10, 714 P.2d 176, 177 (1986).

In the instant case, the jury could well have concluded that appellants' claim that a novation occurred was unreasonable in light of United Fire's failure to inform the insureds of its financial difficulties or to investigate the reputation and financial position of California Life. The McClellands could not have consented, even impliedly, to a novation when they lacked knowledge of material facts necessary in making such a determination. Thus, sufficient evidence exists to support the jury's determination that appellants acted in bad faith in denying Kenneth's insurance claims which arose after October 31, 1983.

### JONI McCLELLAND'S STANDING

The jury awarded Joni $73,000 in compensatory damages for emotional distress due to the denial of benefits for Kenneth. Appellants argue that Joni had no standing to sue them since she was neither a contracting party nor a claimant under the certificate issued by United Fire. We agree.

Liability for bad faith is strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. K Mart Corp. v. Ponsock, 103 Nev. 39, 48, 732 P.2d 1364, 1370 (1987). When no contractual relationship exists, no recovery for bad faith is allowed. Austero v. Nat. Cas. Co. of Detroit, Mich., 133 Cal.Rptr. 107, 110 (Ct.App. 1976); see also Lowe v. American Medical Intern., 494 So.2d 413 (Ala. 1986) (holding that the cause of action for the tort of bad faith refusal to pay was created to protect only the person for whose benefit insurance payments were made).

The McClellands respond that even though Joni was not a named insured under the certificate, she became an insured as a dependent. However, a wife's coverage as a dependent under her husband's health insurance policy does not give her standing to enforce her husband's contract rights for bad faith denial of health care benefits. Hatchwell v. Blue Shield of California, 244 Cal.Rptr. 249, 253 (Ct.App. 1988). In *Hatchwell*, the court reasoned that even though the wife is an insured person and an

express beneficiary regarding her own health care benefits, she is merely an incidental beneficiary in regard to her husband's benefits. *Id.* We adopt the reasoning of *Hatchwell.*

Next, the McClellands argue that Joni has standing because United Fire jeopardized community property by its refusal to pay medical bills. Medical creditors could seek payment from Joni's portion of the community property as well as from her separate property. NRS 123.110; NRS 450.390(2). A South Carolina Supreme Court case supports the McClellands' contention, holding that a spouse who is individually liable for her husband's medical expenses has sufficient interest in enforcement of the health insurance policy to enable her to maintain a cause of action for breach of contract and punitive damages. Ateyeh v. Volkswagen of Florence, Inc., 341 S.E.2d 378, 379-380 (S.C. 1986).

We decline to follow the principles endorsed in *Ateyeh.* Instead, we follow *Hatchwell* which held that a wife did not acquire standing to sue her husband's medical insurer for bad faith based on her community property interest in the contract and community property liability for the medical expenses incurred by her husband. 244 Cal.Rptr. at 254. We agree with *Hatchwell* which refused to expand tort liability for breach of contract since it concluded that the rights of the covered spouse sufficiently protect the community interest. *Id.* Therefore, we continue to require a contractual basis for the tort of bad faith.

We determine that Joni had no standing to bring a bad faith claim against appellants because a contractual basis did not exist between her and the insurer. Consequently, the district court erred by submitting her claims to the jury. Accordingly, we reverse as to the $73,000 in compensatory damages for Joni's emotional distress.

## PUNITIVE DAMAGES

Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages. United States Fidelity v. Peterson, 91 Nev. 617, 620, 540 P.2d 1070, 1072 (1975). To recover punitive damages, plaintiff must also show evidence of "oppression, fraud, or malice, express or implied." NRS 42.010. Appellants contend that the record lacks any evidence showing that their conduct constituted oppression, malice or fraud.

We defined oppression as "a conscious disregard for the rights of others which constitutes an act of subjecting plaintiffs to cruel

and unjust hardship." Ainsworth v. Combined Ins. Co., 104 Nev. 587, 590, 763 P.2d 673, 675 (1988), *petition for cert. filed*, (U.S. Aug. 17, 1989) (No. 89-282) (citations omitted). The McClellands claim that United Fire's failure to notify the insureds of its ejection from California and its further failure to investigate or reveal the unworthiness of California Life was conduct done in conscious disregard for the insureds' rights which constituted an act of subjecting Kenneth to cruel and unjust hardship. We agree.

United Fire never disclosed to its insureds that the California insurance commissioner had issued a cease and desist order against United Fire and had prohibited United Fire from writing insurance in California. Rather, on December 30, 1982, one of United Fire's vice presidents wrote to the McClellands and other insureds, encouraging their continued participation in the AMA plan. United Fire's failure to divulge its financial difficulties prevented Kenneth from making an informed decision whether to change carriers and do business with a financially sound insurance company or to continue his coverage with United Fire. In January 1983, Kenneth could have switched his policy to another carrier. However, when doctors diagnosed Kenneth's kidney problem in March 1983, he was no longer insurable.

Moreover, United Fire admits that it conducted no investigation of California Life's financial condition or reputation in the insurance industry. Five months after United Fire and California Life executed the Agreement, California Life experienced fiscal problems and attempted to cancel coverage under the AMA plan. Furthermore, once the McClellands received the cancellation notice, Kenneth delayed several times in going to the hospital for treatment because the McClellands were struggling financially. Thus, United Fire's less than candid letter of December 30, 1982 demonstrated a callous disregard for Kenneth's rights and resulted in his emotional anguish when medical bills accumulated with no means of paying them. Therefore, we conclude that substantial evidence of oppression on the part of appellants supports the jury's award of punitive damages.

Further, we determine that the reduction in compensatory damages does not require our disturbing the jury's award of punitive damages. *See* Alper v. Western Motels, Inc., 84 Nev. 472, 443 P.2d 557 (1968) (upholding a punitive damage award of $1,500 even though we increased the compensatory damages of $96 by an additional $75); McDonald v. Bennett, 674 F.2d 1080 (5th Cir. 1982) (holding that a reduction in actual damages did not require a reduction in punitive damages which were neither excessive nor disproportionate when compared to the actual damages). In Nevada, we previously held that punitive damages

"need not bear any relationship to the compensatory damage award." Ace Truck v. Kahn, 103 Nev. 503, 506, 746 P.2d 132, 134 (1987). Rather, *Ace Truck* established several factors which we consider in our review of a punitive damages award.

*Ace Truck* set forth these factors: (1) the financial position of the defendant; (2) the culpability and blameworthiness of the tortfeasor; (3) the vulnerability and injury suffered by the offended party; (4) the offensiveness of the punished conduct when compared to societal norms of justice and propriety; and (5) the means judged necessary to deter future misconduct. *Id* at 510, 746 P.2d at 137. Since these factors focus primarily on the punishment and deterrence of tortfeasors' conduct, we conclude that the reversal of Joni's compensatory damage award does not require a reduction in the punitive damages award. Nor is the $500,000 punitive damage award excessive or clearly disproportionate under the *Ace Truck* analysis.

Having reviewed appellants' other claims of error, we conclude that they lack merit. Therefore, we affirm the district court judgment insofar as it awarded Kenneth compensatory and punitive damages, and reverse that portion of the court's decision awarding compensatory damages to Joni.