**Susan VARGAS, Plaintiff,**

v.

**CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER–INSURANCE BUREAU, et al., Defendants.**

**No. CV–N–91–260–ECR.**

United States District Court, D. Nevada.

March 12, 1992.

Harold G. Albright, Reno, Nev., for plaintiff.

Joseph J. Van Walraven, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiff's motions for remand (document # 12) and to designate and join a "DOE" defendant (document # 13) are presently before the court. The motion for remand argues that there is no diversity of citizenship due to the insurance "direct action" exception of the diversity statute, 28 U.S.C. § 1332(c)(1). The motion to join the "DOE" defendant seeks to add as a defendant one of the employees of Defendant California State Automobile Association Inter–Insurance Bureau ("CSAA") and, if successful, would destroy diversity. Both motions are denied.

## THE MOTION FOR REMAND [1]

■ The relevant portion of 28 U.S.C. § 1332(c)(1) states that for purposes of diversity jurisdiction

a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance,* ... to which action the insured is not joined as a party-defendant, such insurer shall [also] be deemed a citizen of the State of which the insured is a citizen....

(Emphasis added). Plaintiff claims that since she is an insured directly suing her insurer, the insured must be deemed a citizen of her state, and thus, there can be no diversity of citizenship.

■ Traditionally, however, courts, including the Ninth Circuit, have defined a "direct action" for purposes of this section as one "in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurance without joining the insured or first obtaining a judgment against him." *Beckham v. Safeco Ins. Co. of America,* 691 F.2d 898, 901–02 (9th Cir.1982). In other words, this direct action exception that destroys diversity exists only where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's liability insurer directly. This is the universal rule. *See, e.g., Myers v. State Farm Ins. Co.,* 842 F.2d 705, 707 (3d Cir.1988); *Fortson v. St. Paul Fire & Marine Ins. Co.,* 751 F.2d 1157, 1159 (11th Cir.1985), *reh. denied,* 757 F.2d 287; *White v. United States Fidelity and Guarantee Co.,* 356 F.2d 746, 747–48 (1st Cir.1966).

Plaintiff argues, however, that there has been a change in the law. She claims that in *Northbrook Nat'l Ins. Co. v. Brewer,* 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989), the Supreme Court implicitly reversed the long standing rule discussed above. This argument comes not from the case itself (for this issue is not directly addressed in *Northbrook* ), but in a district court decision from California. In *Chavarria v. Allstate Ins. Co.,* 749 F.Supp. 220 (C.D.Cal.1990), the district court claimed that support for the argument that Plaintiff makes here may be found in the *Northbrook* case. The decision by the *Chavarria* court, however, is clearly erroneous and has been criticized in subsequent cases.

The *Northbrook* case decided the issue of whether the direct action exception applied to the situation where an *insurer* sues its *insured* in federal court on the basis of diversity. It had absolutely nothing to do with the opposite situation (which is found in the present case) where the insured sues her insurer. In fact, the *Northbrook* court specifically declined to decide the question of what is a "direct action" suit under § 1332(c)(1). *See Northbrook,* 493 U.S. at 9 n. 1, 110 S.Ct. at 299 n. 1.

The Supreme Court ruled in *Northbrook* that the direct action proviso did not apply to suits *by* insurers since, by its plain language, § 1332(c)(1) only applies to suits *against* insurers. *Id.* Somehow from this language the *Chavarria* court concluded that *Northbrook* supported the novel proposition that § 1332(c)(1) could apply to cases where an insured sues his or her insurer. *Chavarria,* 749 F.Supp. at 222.

At least three subsequent cases have pointed out the fallaciousness of the *Chavarria* decision. *See Field v. Liberty Mut. Ins. Co.,* 769 F.Supp. 1135, 1138 n. 2 (D.Hawaii 1991) ("In *Chavarria,* the court essentially ignored the clear holding of *Beckham* for reasons which, in this court's opinion, are not persuasive."); *Basel v. Allstate Ins. Co.,* 757 F.Supp. 39 (N.D.Cal.1991) ("this Court does not find *Chavarria* persuasive, especially in light of controlling Ninth Circuit authority to the contrary [i.e.

---

**1.** Defendant claims that Plaintiff's motion for remand is untimely in that she did not challenge the removal of this case from the state court within thirty days of it being brought to federal court. Defendant is correct that a plain-tiff may only challenge *procedural defects* in the removal petition during the first thirty days. However, a challenge based on lack of subject matter jurisdiction is always timely.

*Beckham* ]"); *Kimball Small Properties v. American Nat'l Fire Ins. Co.,* 755 F.Supp. 1465 (N.D.Cal.1991) (in disapproving *Chavarria* court stated that the "holding of *Northbrook* in no way reversed the definition of 'direct action' in *Beckham*"). Additionally, other districts continue to apply the law just as they did prior to *Northbrook. See, e.g., Barton v. Allstate Ins. Co.,* 729 F.Supp. 56 (W.D.Tex.1990) (action by an insured against the insurer not a "direct action" under § 1332(c)(1)); *Mazzuka v. SMA Life Assurance Co.,* 726 F.Supp. 1400 (E.D.N.Y.1990) (§ 1332(c)(1) direct action exception inapplicable where insured sues insurer).[2]

On the basis of the above analysis, the court sees no reason not to apply the Ninth Circuit precedent in *Beckham.* The "direct action" diversity exception contained in § 1332(c)(1) does not apply to suits brought by an insured against his or her insurer. Since the only presently named Defendant, CSAA, is incorporated in California and has its principal place of business there, there is diversity between it and the Plaintiff, and therefore the motion for remand on the basis of incomplete diversity must be denied.

## MOTION TO DESIGNATE AND JOIN "JOHN DOE" DEFENDANT McKENZIE

### A. *Rule 20*

Fed.R.Civ.P. 20 [3] allows

[a]ll persons [to] be joined in one action as defendants if there is asserted against them ... any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

When a plaintiff seeks after removal to join a defendant whose joinder would destroy diversity, the court must either deny joinder, or permit joinder and remand the case to the state court. 28 U.S.C. § 1447(e). Since Mr. McKenzie, the proposed defendant, is not a proper party under the complaint as it now stands, the court denies Plaintiff's request to join him as a defendant.

### B. *Is McKenzie a Proper Party Under the Allegations in the Plaintiff's Complaint?*

■ No set of facts could entitle Plaintiff to "any right to relief" from McKenzie on the present complaint. The complaint alleges three causes of action: breach of the insurance policy, insurance bad faith, and something called "malicious conduct." This third claim, for malicious conduct, seems to be nothing more than a way to save space for a future amended claim. In and of itself it says nothing and states no cognizable cause of action.

Thus, if the court is to allow the Plaintiff to add McKenzie as a defendant, there must be some legal basis for the joinder in either the first or second claim. In other words, Plaintiff must be able to allege a cause of action against McKenzie for either breach of contract or bad faith.

It is clear that McKenzie is not a party to the contract. His only actions in this case relate to his position as agent of CSAA. If McKenzie did something within the scope of his agency that violated the terms of the contract, Plaintiff's only recourse is to sue CSAA as McKenzie's principal and as the signatory to the contract. If McKenzie did something outside the scope of his agency to harm Plaintiff, such act could not properly be brought as a breach of contract action since McKenzie had no contractual relationship with the Plaintiff.

**2.** The result in *Chavarria* makes no sense when one considers its implications. Were *Chavarria* correct, then an insured could *never* bring an action against the insurer in federal court on the basis of diversity because, by definition under the statute, the citizenship of both parties is the citizenship of the insured. Also, the language of the statute that requires that the insured not be named as a party-defendant is rendered meaningless since the insured will never be a party-defendant in a suit that he or she brings as a plaintiff. Certainly neither result could have been intended by Congress.

**3.** For the sake of this analysis the court assumes that Plaintiff's motion for joinder is made pursuant to Fed.R.Civ.P. 20 and not Rule 19 since the proposed defendant, Mr. McKenzie, is obviously not a necessary or indispensable party.

Implicitly recognizing the above, Plaintiff argues only that McKenzie's acts either give rise to a bad faith claim separate from the claim against CSAA, or in the alternative, that McKenzie is liable for tortious conduct outside the scope of his employment. For the first proposition, Plaintiff argues that Nevada law applies to this case and cites *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 107 Nev. 226, 808 P.2d 919 (1991).[4]

Plaintiff claims that *Hilton Hotels* changes Nevada law and allows a bad faith claim to exist independent of the contractual relationship. This is not true. All *Hilton Hotels* defendants from whom the plaintiff sought a judgment of bad faith were parties to the contract. In reality, the passage cited by Plaintiff explores the scenario "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract...." *Hilton Hotels*, 808 P.2d at 922–23. In such a situation "that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Id.* at 923.

 The "bad faith" cause of action is actually one for breach of an implied covenant of good faith and fair dealing. "This means that *each party* impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract." *Id.* (citing the trial court's jury instruction) (emphasis added). It is antithetical to the concept of the bad faith cause of action to assert that someone who is not a party to the contract may be liable for violating one of the contract's implied covenants. *See United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989). There is no basis to contradict what is still the law in Nevada: "[w]hen no contractual relationship exists, no recovery for bad faith is allowed." *Id.* 105 Nev. at 511, 780 P.2d 193.[5]

Thus, Plaintiff is left with the argument that McKenzie's liability is based on acts performed outside the scope of his agency/employment with CSAA. However, no such allegation exists in the complaint, not even against an unknown or "Doe" defendant. This brings the discussion back to the remaining claim for "malicious conduct." As stated above, the third cause of action is nothing more than a technical mechanism that contemplates a possible future amendment to the complaint. As it stands now it states no cause of action.

On the basis of the above analysis the court concludes that Plaintiff can state no cause of action against Mr. McKenzie under the complaint as it is written. He is, therefore, not a proper party for joinder under Rule 20. Thus, Plaintiff's motion to designate and join the "Doe" defendant is denied as well.

IT IS, THEREFORE, HEREBY ORDERED that Plaintiff's motions for remand (document # 12) and to designate and join a "DOE" defendant (document # 13) are both DENIED.

---

4. Recognizing that California law resolves the bad faith issue in Defendant's favor, Plaintiff argues for Nevada law. The court does not decide the choice of law issue here but instead discusses Nevada law for the sole purpose of considering Plaintiff's arguments.

5. Again, Plaintiff might argue that McKenzie's conduct as CSAA's agent gives rise to the bad faith claim. If so, just as in the breach of contract situation, CSAA would be liable for bad faith through the actions of its agent. McKenzie, as a non-party, could not also be personally liable.