# IN THE SUPREME COURT OF THE STATE OF NEVADA

GRANITE CONSTRUCTION
COMPANY, A CALIFORNIA
CORPORATION,
Appellant,
vs.
REMOTE ENERGY SOLUTIONS, LLC,
A NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

GRANITE CONSTRUCTION
COMPANY, A CALIFORNIA
CORPORATION,
Appellant,
vs.
REMOTE ENERGY SOLUTIONS, LLC,
A NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 69618

FILED

MAY 25 2017

No. 69989

## ORDER OF AFFIRMANCE

These are consolidated appeals from a final judgment in a breach of contract action and a post-judgment order awarding attorney fees. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

## FACTS AND PROCEDURAL HISTORY

Granite Construction Company (Granite) entered into three consecutive consulting agreements with Remote Energy Solutions, LLC (RES). The first two agreements were in effect for six months and seven months, respectively. Both agreements stated that RES was "[r]esponsible for leading . . . business development efforts and developing

relationships . . . to ensure that Granite is positioned for short and long-term project opportunities." The first two agreements also provided RES a two percent bonus of up to $150,000 "for work resulting from this contract." After the second agreement expired, the parties entered into a third agreement. The third agreement did not contain a bonus provision and included language that "[i]t is the intention of the parties that this Agreement supersedes any and all prior verbal or written agreements or understandings between [the parties]."

RES obtained work for Granite from several new companies in 2013. As a result, Granite received $282,000 in additional work. RES requested, and Granite paid, a bonus for the additional work. The bonus invoice only listed the names of companies to which it made "introductions." Also during this time, RES sought business from Barrick Gold Corporation (Barrick) and Newmont Mining Corporation (Newmont) by contacting key personnel via email, telephone, and in-person meetings, as well as arranging tours and presentations for potential agreements. Granite entered into service agreements with Barrick and Newmont while the third agreement was in effect. RES requested a two percent bonus for each project under the prior two agreements. Granite refused payment, and RES filed its complaint, asserting, *inter alia*, causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

With the original trial date set for November 2, 2015, RES served upon Granite its Offer of Judgment on October 16, 2015. Ultimately, however, the district court granted summary judgment in favor of RES. After the district court ordered summary judgment, RES

filed a motion for attorney fees pursuant to its earlier offer of judgment. The district court awarded RES's attorney fees.

## DISCUSSION

*The district court did not err by granting summary judgment in favor of RES on its contract claims.*

### Standard of review

This court reviews a district court's order granting summary judgment de novo, without deference to the findings of the lower court. *Francis v. Wynn Las Vegas, LLC*, 127 Nev. 657, 670, 262 P.3d 705, 714 (2011). "Summary judgment is appropriate where no genuine issue of material fact remains for trial and one party is entitled to judgment as a matter of law." *Margrave v. Dermody Props., Inc.*, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994); *see also* NRCP 56(c). "Whether or not a document is ambiguous is a question of law for the court." *Margrave*, 110 Nev. at 827, 878 P.2d at 293. "A contract is ambiguous if it is *reasonably* susceptible to more than one interpretation." *Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (emphasis added) (internal quotation omitted).

*Granite's obligation to pay a bonus survived the expiration of the first and second agreements, and neither agreement required a specific causal connection to trigger the bonus.*

Granite avers that the bonus provisions did not survive the expiration of the first or second agreements, and RES presented no evidence that its efforts triggered the bonus provisions. We disagree.

Where a contract has expired, the parties generally are "released . . . from their respective contractual obligations." *Litton Fin. Printing Div. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 206 (1991). However, an exception exists where the parties' dispute regards a "right that accrued or vested under the agreement, or where, under normal

principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.*

Nothing in the first or second agreement explicitly precludes a bonus award after their expiration dates, and neither agreement's bonus provision includes durational language. Further, interpreting the first and second agreements as Granite suggests would produce an unreasonable interpretation. Part of RES's duty under the contract was to secure long-term project opportunities; limiting the bonus provisions would bar RES from collecting a bonus for obtaining larger projects which require more time to finalize and preclude a bonus award even if an agreement was finalized one day after the agreements' terms expired. Finally, any concerns regarding perpetual bonuses are misplaced, as the agreements include limitations on the total bonus amount.

Moreover, nothing in the bonus provisions required RES to specifically identify how it attained the new business. RES was generally "[r]esponsible for *leading* . . . business development efforts and developing relationships," and it would be given a bonus for "establish[ing] new work at new sites." (Emphasis added.) It would be unreasonable to interpret these provisions as requiring RES to be the sole source of new business in an inherently collaborative effort. This position is bolstered by the circumstances of the 2013 bonus payment. The invoice that RES sent Granite for the 2013 bonus payment shows that Granite did not require a specific causal connection, as it merely named companies which RES made "introductions" to without more. RES has presented ample evidence demonstrating "introductions" to both Barrick and Newmont through contacting personnel through email, telephone, and in-person meetings, as well as arranging tours and presentations for potential agreements.

Therefore, we conclude that Granite's bonus obligation survived the expiration of the first and second agreements, and neither agreement required a specific causal connection.

*The third agreement did not constitute a novation.*

RES argues that Granite's bonus obligation could only be extinguished by a valid substituted contract, and the third agreement's integration clause did not constitute a novation. We agree.

A novation, or substituted contract, "is a contract that is itself accepted . . . in satisfaction of [an] existing duty" which "discharges the original duty." Restatement (Second) of Contracts § 279 (Am. Law Inst. 1981). "A novation consists of four elements: (1) there must be an existing valid contract; (2) all parties must agree to a new contract; (3) the new contract must extinguish the old contract; and (4) the new contract must be valid." *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 508, 780 P.2d 193, 195 (1989). "[T]he intent of all parties to cause a novation must be clear." *Id.* In determining intent, "courts look to the parties' manifest intent, not their subjective intent." *Ford v. Am. Express Fin. Advisors, Inc.*, 98 P.3d 15, 22 (Utah 2004); *cf. Vacura v. Haar's Equip, Inc.*, 364 N.W.2d 387, 392 (Minn. 1985).

Other courts have indicated that the required intent to cause a novation is not established by an integration clause that only articulates boilerplate language, as such language merely indicates that the parties agree the contract is to be considered completely integrated. *See, e.g., Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999); *Ford*, 98 P.3d at 24 (holding that a subsequent agreement's integration clause "merely limit[ed] what [the court could] evaluate when determining the

parties' intent" for the new agreement, and said "nothing about relieving . . . obligations . . . already incurred" under a prior agreement).

Here, the third agreement's integration clause can be understood to merely signal that the third agreement was completely integrated for the purposes of evaluating the parties' intent for that agreement. Because the third agreement's integration clause includes nothing regarding relieving any prior-incurred obligations, we conclude that the third agreement does not demonstrate the required intent for a novation and did not extinguish Granite's bonus obligation.

*The district court did not err by awarding RES's attorney fees.*

Granite argues that because RES failed to submit its offer of judgment more than ten days prior to the original trial date, the district court erred by awarding attorney fees. We disagree.

This court reviews questions of statutory construction de novo. *Golightly & Vannah, PLLC v. TJ Allen, LLC,* 132 Nev., Adv. Op. 41, 373 P.3d 103, 105 (2016). A party may "[a]t any time *more than 10 days* before trial" serve an offer of judgment. NRCP 68(a) (emphasis added). If the offeror timely serves an offer of judgment, and "the offeree rejects an offer and fails to obtain a more favorable judgment, . . . the offeree shall pay the offeror's . . . reasonable attorney's fees . . . actually incurred by the offeror from the time of the offer." NRCP 68(f).

NRCP 6(a) prescribes the manner of computing time under NRCP 68. *See Palace Station Hotel & Casino, Inc. v. Jones,* 115 Nev. 162, 164, 978 P.2d 323, 324 (1999). Under NRCP 6(a), "the day of the act, event, or default from which the designated period of time begins to run shall not be included," which this court has interpreted as counting backward from and including the day prior to the commencement of trial.

 

*Palace Station*, 115 Nev. at 165, 978 P.3d at 325. After *Palace Station*, NRCP 6(a) was revised to include an exception that "[w]hen the period of time prescribed or allowed is *less than 11 days*, intermediate Saturdays, Sundays, and non-judicial days shall be excluded in the computation." (Emphasis added.)

Here, an offer of judgment must be served *more than* 10 days prior to trial under NRCP 68(a), therefore, the time allowed is *not less than* 11 days. Accordingly, the time calculation includes non-judicial days. RES served its offer of judgment on October 16, 2015, and the original trial date was November 2, 2015. Counting backwards from the day prior to the commencement of trial, RES served its offer of judgment over 16 days before trial. Therefore, RES's service of its offer of judgment was timely under NRCP 68, and the district court did not err in awarding RES attorney fees.

## CONCLUSION

The district court did not err by granting summary judgment in favor of RES on its contract claims or by granting RES's motion for attorney fees. Accordingly, we

ORDER the judgment and order of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVAOA

(O) 1947A

cc:    Hon. Patrick Flanagan, District Judge
Richard L. Elmore, Chtd.
Guild, Gallagher & Fuller, Ltd.
Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A