137 Nev., Advance Opinion 35

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SOMERSETT OWNERS ASSOCIATION, A DOMESTIC NONPROFIT CORPORATION, Appellant, vs. SOMERSETT DEVELOPMENT COMPANY, LTD., A NEVADA LIMITED LIABILITY COMPANY; SOMERSETT, LLC, A DISSOLVED NEVADA LIMITED LIABILITY COMPANY; SOMERSETT DEVELOPMENT CORPORATION, A DISSOLVED NEVADA CORPORATION; Q & D CONSTRUCTION, INC., A NEVADA CORPORATION; PARSONS BROS ROCKERIES, INC., A WASHINGTON CORPORATION; AND STANTEC CONSULTING SERVICES, INC., Respondents. | No. 79921 **FILED** JUL 29 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court summary judgment in a construction defect action. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

*Affirmed.*

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager, John Samberg, and Royi Moas, Reno,
for Appellant.

Castronova Law Offices, P.C., and Stephen G. Castronova, Reno,
for Respondent Parsons Bros Rockeries, Inc.

Hoy Chrissinger Vallas, P.C., and Theodore E. Chrissinger, Reno,
for Respondent Stantec Consulting Services, Inc.

21-21960

Lee, Landrum & Ingle and Natasha A. Landrum, Las Vegas,
for Respondent Q & D Construction, Inc.

Thorndal Armstrong Delk Balkenbush & Eisinger and Charles L. Burcham,
Reno,
for Respondents Somersett Development Company, Ltd.; Somersett, LLC;
and Somersett Development Corporation.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, PICKERING, J.:

The miles of stacked rock retaining walls (rockery walls) that entwine and support the Somersett residential development in northern Nevada are failing, and via the underlying action, appellant Somersett Owners Association (SOA) seeks to recover damages against those involved in the rockery walls' design and construction. But the Nevada Legislature has effected its judgment with regard to such suits—in the form of a statute of repose—that defendants like those SOA sued in the underlying action generally should "be free from liability after the legislatively determined period of time." *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (quoting 54 C.J.S. *Limitations of Actions* § 7 (2010)). In this case, a six-year period applies. NRS 11.202 (2015). That six-year period begins when the improvement to the real property is "substantial[ly] complet[e]," NRS 11.202(1); NRS 11.2055, which we clarify in the context of the common law,

---

[1]The Honorable James W. Hardesty, Chief Justice, voluntarily recused himself from participation in this matter.



means sufficiently complete so that the owner can occupy or utilize the improvement. Here, SOA failed to offer anything beyond "gossamer threads of whimsy, speculation, and conjecture" to support its argument that it commenced this action within that six-year period. *Wood v. Safeway, Inc.*, 121 Nev. 724, 732, 121 P.3d 1026, 1031 (2005) (quoting *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 713-14, 57 P.3d 82, 87 (2002)). Thus, "[l]ike a discharge in bankruptcy, [the] statute of repose can be said to provide a fresh start or freedom from liability" for the respondents in this case. *CTS Corp.*, 573 U.S. at 9. Accordingly, the district court did not err by granting their collective motion for summary judgment, and we affirm.

I.

In early 2006, respondent Q & D Construction, Inc., graded the property that would eventually become the development into terraced residential lots and streets. Respondent Parsons Bros Rockeries, Inc., then constructed more than 13 miles of rockery walls to support the terraced lots. This phase of the development's construction ceased in December 2006, at which time respondent Stantec Consulting Services, Inc., issued letters to Somersett Development Company, Ltd.,[2] indicating that Stantec had conducted a final inspection on the rockery walls and that "the inspected work was performed . . . in accordance with the approved (stamped) plans, specifications[,] and the . . . International Building Code." Somersett then divided and sold the lots to individual builders to construct housing units on them. At the time of appeal, there were more than 3,000 such units in the development.

---

[2]The suit also names Somersett Development Company's predecessors in interest, respondent Somersett Development Corporation and Somersett, LLC. Because the facts are unclear as to each entity's alleged separate role, this opinion refers to them collectively as Somersett.

Though the expected lifespan of the rockery walls was at least 50 years, some began failing as early as 2011. After two walls collapsed on the same day in February 2017, SOA hired an inspector to determine whether there were additional as-yet undetected defects in the rockery walls. In fact, the inspector concluded that the 70,000 lineal feet of rockery walls were "globally unstable," and a separate investigation further revealed that two-thirds of the rockery walls materially deviated from the original plans and specifications. Accordingly, in 2017, SOA brought suit against Somersett, Parsons Bros, Q & D, and Stantec (collectively, respondents) for negligence and negligence per se, breach of express and implied warranties, negligent misrepresentation and/or failure to disclose, declaratory relief, and bad faith. The respondents moved for summary judgment on the ground that the six-year statute of repose in NRS 11.202 (2015), which limited certain civil actions for damages "commenced against the owner, occupier or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property," had expired.[3] The district court granted respondents' motion for summary judgment, and this appeal followed.

---

[3]The 2019 version of this statute of repose (which offers a more generous ten-year period) may have applied to the underlying action, given its retroactivity clause. *See* 2019 Nev. Stat., ch. 361, § 11(4), at 2268 ("The period of limitations on actions set forth in NRS 11.202, as amended by section 7 of this act, apply retroactively to actions in which the substantial completion of the improvement to the real property occurred before October 1, 2019."); *see also Sandpointe Apartments, LLC v. Eighth Judicial Dist. Court*, 129 Nev. 813, 826, 313 P.3d 849, 858 (2013) (explaining that a statute may apply retroactively where "the Legislature clearly manifests an intent to apply the statute retroactively") (quoting *Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 154, 179 P.3d 542, 553 (2008)). But the retroactive effect of the 2019 version was not a matter

## II.

NRS 11.202 (2015) prohibits the commencement of a construction defect action such as this one[4] "more than 6 years after the *substantial completion*" of the improvement to real property in question. (emphasis added). Accordingly, the threshold question that guides our de novo review, *see Wood*, 121 Nev. at 729, 121 P.3d at 1029 (noting that a ruling on summary judgment is subject to de novo review), is when the rockery walls achieved "substantial completion" for purposes of NRS 11.202. A companion statute, NRS 11.2055, undertakes to define "substantial completion." It provides:

> 1. Except as otherwise provided in subsection 2, for the purposes of this section and NRS 11.202, the date of substantial completion of an improvement to real property shall be deemed to be the date on which:
>
> (a) The final building inspection of the improvement is conducted;
>
> (b) A notice of completion is issued for the improvement; or
>
> (c) A certificate of occupancy is issued for the improvement,
>
> whichever occurs later.

---

briefed by SOA, who indicated at oral argument that it only raised the 2015 statute. Accordingly, we apply NRS 11.202 (2015) here. The change from six to ten years would not alter the outcome in this case, because the suit was filed in 2017, more than ten years after the December 2006 substantial completion date discussed *infra*.

[4]SOA argues that its claims under NRS Chapter 116 are not subject to the statute of repose, but such claims are not listed among the exceptions to the statute of repose set forth in NRS 11.202, and the maxim that the expression of one thing is the exclusion of another accordingly applies. *See Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967).




> 2. If none of the events described in subsection 1 occurs, the date of substantial completion of an improvement to real property must be determined by the rules of the common law.

The summary judgment proceedings in district court advanced on the basis that the trigger dates specified in NRS 11.2055(1)(a)-(c) did not apply, so "the date of substantial completion . . . must be determined by the rules of the common law," NRS 11.2055(2), the contours of which are a matter of first impression for this court. *See Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 437, 245 P.3d 542, 545 (2010) (reviewing summary judgment based on issues raised and resolved in district court).

Accepting NRS 11.2055(2)'s reference to the common law as their starting point, both sides purport to endorse the definition of substantial completion offered by the American Institute of Architects (the AIA)—"the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." Werner Sabo, *Legal Guide to AIA Documents* § 4.56 (6th ed. 2018). This definition is well recognized and frequently used. *See Markham v. Kauffman*, 284 So. 2d 416, 419 (Fla. Dist. Ct. App. 1973) (noting that a building is substantially complete "when it has reached the stage where it can be put to the use for which it was intended, even though some minor items might be required to be added") (quoting *Sherwood Park, Ltd. v. Meeks*, 234 So. 2d 702, 703 (Fla. Dist. Ct. App. 1970)); *State ex rel. Stites v. Goodman*, 351 S.W.2d 763, 766 (Mo. 1961) (accord); *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1093 (N.J. 1996) (holding that the statute of repose began running at substantial completion as defined by the AIA); *Etheridge ex rel. Etheridge v. YMCA of Jackson*, 391 S.W.3d 541, 548

(Tenn. Ct. App. 2012) (calling the AIA definition of substantial completion "[t]he most popular") (internal quotation omitted); *see also* 57 Joel Lewin & Eric F. Eisenberg, *Mass. Prac., Construction Law* § 3:12 (2020) (discussing the "widely-used" definition). We therefore adopt the AIA definition of substantial completion as stating the rules of the common law for purposes of NRS 11.2055(2).

Under this standard, whether an improvement to property is substantially complete is a fact-intensive inquiry, turning on the specific circumstances of the improvement in question. *PIH Beaverton, LLC v. Super One, Inc.*, 323 P.3d 961, 971 (Or. 2014) (examining record evidence of occupancy and completion notice in determining whether an improvement was substantially complete). And here, SOA bore the burden of submitting evidence of those circumstances to support that its action was timely. *G & H Assocs. v. Ernest W. Hahn, Inc.*, 113 Nev. 265, 271, 934 P.2d 229, 233 (1997) (stating that "in addition to proving the elements of the cause of action, one must also prove that the cause of action was brought within the time frame set forth by the statute of repose"). Specifically, the district court properly granted respondents' motion for summary judgment unless SOA, "by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine factual issue" as to whether the action was brought within the time frame set forth by NRS 11.202 (2015). *Wood*, 121 Nev. at 731, 121 P.3d at 1030-31 (internal quotation omitted).

As relevant to this particular record, it has been said that "[p]aperwork can be important for determining the date of substantial completion." 2A Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor Construction Law* § 7:29 (2020); *see also Suffolk City Sch. Bd. v. Conrad Bros., Inc.*, 495 S.E.2d 470, 473 (Va. 1998) (noting that the statute of repose began to run upon the architect's submittal of final certificates for

payment to the school board despite that work had not yet ceased). Although the final project report letters that Stantec issued in November and December 2006 were part of the summary judgment record in district court, respondents did not argue that these letters qualified to trigger the statute of repose under NRS 11.2055(1)(a). *See Schuck*, 126 Nev. at 437, 245 P.3d at 545. Nonetheless, under NRS 11.2055(1), the letters remain relevant insofar as they support the conclusion that work on the rockery walls was "sufficiently complete" under the AIA's common law standard. Buttressing the implication from these letters is the fact that Parsons Bros ceased construction on the rockery walls around the same time, and the parcels that the rockery walls framed and supported were sold and thereafter developed into thousands of single-family housing units and community common areas. Viewed together, these facts offer convincing evidence that the walls were substantially complete under the AIA's common law definition when Stantec issued its final project report letters, that is, in December 2006 at the latest. Meanwhile, the action in question did not commence until 2017, which sets it well outside the scope of the six-year statute of repose established by NRS 11.202 (2015).

Rather than submitting evidence or affidavits contradicting the facts set forth above, SOA tacks an entirely different direction. Specifically, SOA stands on its experts' opinions that the AIA's definition of substantial completion requires that the improvement be "*fit* to be utilized for [its] intended use," and that the rockery walls in question were not. (emphasis added). Put differently, SOA does not dispute respondents' timeline but instead argues that the rockery walls are *still not* substantially complete—despite Stantec's letters, Parsons Bros' cessation of construction, the sale of the parcels they surround, and subsequent development and occupation of those parcels—because the rockery walls allegedly deviate from the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

planning documents by being multitiered, over ten feet in height, and load bearing where not so intended. This does not land.

First, accepting SOA's twist on the AIA's definition would, in practice, defeat the purpose of the statute of repose. *See Etheridge*, 391 S.W.3d at 548 (rejecting argument that defects in the property precluded the statute of repose from commencing because "accepting [that] argument would defeat the statute's purpose"). These deviations raise questions regarding the *quality* of the rockery walls' construction, not whether that construction was substantially complete under the AIA definition, which requires neither "'substantial compliance' with the contract [n]or an absence of defects." *Trinity Church v. Lawson-Bell*, 925 A.2d 720, 730 (N.J. Super. Ct. App. Div. 2007). Indeed, it is well accepted that substantial completion for purposes of the AIA definition may occur even where the improvement in question deviates from the contract specifications, therefore "requiring . . . finishing, corrective[,] or remedial work." *Russo Farms*, 675 A.2d at 1093 (quoting *Viking Builders, Inc. v. Felices*, 391 So. 2d 302, 303 n.1 (Fla. Dist. Ct. App. 1980)) (adopting AIA's definition of substantial completion in the context of the state statute of repose); *see also Meyer v. Bryson*, 891 S.W.2d 223, 225 (Tenn. Ct. App. 1994) (rejecting the argument that an improvement was not substantially complete "because there [were] still defects in the house that [had] not been repaired"); *cf. Strickland v. Arch Ins. Co.*, 718 F. App'x 927, 929 (11th Cir. 2018) (holding that the time to commence a payment bond claim under a Georgia statute providing for the commencement of the period upon "completion" was interpreted not to mean total completion but to include "substantial completion" with only "punch list" items remaining to be done).

Moreover, any testimony by SOA's experts redefining the legal standard for determining "substantial completion" improperly invades the

SUPREME COURT
OF
NEVADA

(O) 1947A

9

province of the court, whose job it is to determine applicable law. *See United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 509, 780 P.2d 193, 196 (1989) ("[C]ourts should exclude testimonial opinion on the state of the law."). And, because the experts' declarations further measure substantial completion by an improper legal standard—introducing a concept of fitness for intended use—the experts' declarations cannot themselves satisfy SOA's burden of producing evidence that the rockery walls were substantially complete within six years of the commencement of this action.

### III.

Perhaps recognizing the shortcomings in their proffer, SOA leans heavily on the perceived inequity of applying the statute of repose here. Specifically, SOA argues that the six-year period of repose in NRS 11.202 (2015) should be tolled because Somersett controlled the homeowner association board until January 2013. But SOA bases this argument on *First Interstate Bank of Denver, N.A. v. Central Bank & Trust Co. of Denver*, 937 P.2d 855, 860 (Colo. App. 1996), which is neither controlling nor persuasive on these facts, because there, the court found a statute of repose to be tolled by an express agreement between the parties. *Id.* at 860-61. That is, *Central Bank* supports the contention that a party could theoretically waive their rights under a statute of repose by agreement, but no such waiver is alleged here. And, while SOA also includes a string cite from *Central Bank*, the cases cited therein are generally distinguishable because they involve the application of equitable principles to *statutes of limitations, Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1070-71 (7th Cir. 1978) (applying equitable estoppel to statute of limitations); an express tolling agreement, *see McCool v. Strata Oil Co.*, 972 F.2d 1452, 1459 (7th Cir. 1992) (holding that statute of repose was not implicated because parties agreed to toll any applicable statute of limitations); *One N. McDowell Ass'n*

SUPREME COURT
OF
NEVADA


(O) 1947A

*of Unit Owners, Inc. v. McDowell Dev. Co.*, 389 S.E.2d 834, 836 (N.C. Ct. App. 1990) (tolling statute of repose on equipment warranty claims based on express agreement); or legislation that expressly tolls a statute of repose. *Southard ex rel. Southard v. Miles*, 714 P.2d 891, 898 (Colo. 1986) (tolling statute of repose as well as statute of limitations in malpractice actions under legislative exception); *see also Alfred v. Esser*, 15 P.2d 714, 716 (Colo. 1932) (tolling statutes of repose because the specific statutes at issue "contemplate that some sort of notice be given" and none was); *Bryant v. Adams*, 448 S.E.2d 832, 837 (N.C. Ct. App. 1994) (holding that specific statutes envisioned tolling of the statute of repose for products liability in the case of minors and others under disability).

Entirely contrary to SOA's position, a preclusion on tolling is generally "the hallmark of statutes of repose." *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 833 F.3d 1125, 1132 (9th Cir. 2016); *see Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, __, 137 S. Ct. 2042, 2053 (2017) (stating that "[c]onsistent with the different purposes embodied in statutes of limitations and statutes of repose, it is reasonable that the former may be tolled by equitable considerations even though the latter in most circumstances may not"); *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003) (noting that "[t]here is a crucial distinction in the law between 'statutes of limitations' and 'statutes of repose,'" and that "[s]tatutes of repose are not subject to equitable tolling," collecting cases); *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014); *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 795 (6th Cir. 2016); *Prasad v. Holder*, 776 F.3d 222, 228 (4th Cir. 2015). And this court has recognized this general principle. *FDIC v. Rhodes*, 130 Nev. 893, 899, 336 P.3d 961, 965 (2014) (noting that a statute of limitations may be equitably tolled, while a statute of repose may not).



The perceived unfairness resulting from the application of the statute of repose on these facts is not within this court's purview to resolve—"[s]tatutes of repose effect a *legislative* judgment that a defendant should be free from liability after the legislatively determined period of time.'" *CTS Corp.*, 573 U.S. at 9 (quoting 54 C.J.S. *Limitations of Actions* § 7 (2010)) (emphasis added). True, the 2019 Legislature amended NRS 11.202 to add a fraud exception, *see* NRS 11.202(2) (2019), and some courts have applied equitable estoppel to prevent a defendant from sheltering under a statute of repose when fraud is alleged. *Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 587 (7th Cir. 1987) (equitable estoppel may defeat statute of repose where "one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage") (quoting *Union Mut. Ins. Co. v. Wilkinson*, 80 U.S. 222, 233 (1871)); *Craven v. Lowndes Cty. Hosp. Auth.*, 437 S.E.2d 308, 310 (Ga. 1993). But, as noted in note 3 *supra*, SOA expressly indicated at oral argument that it raised only the 2015 statute, not the subsequent amendments. And SOA further conceded in oral argument that it has not presented potentially qualifying fraud allegations here. We therefore leave the question of the existence and scope of any such exceptions open for when that question is actually at issue.

IV.

In sum, SOA failed to set forth specific facts demonstrating the existence of a genuine factual issue as to whether it brought the underlying suit within the six-year period set by NRS 11.202 (2015). Instead, the record indicates that the period of repose began running, at the latest, in December 2006, when the rockery walls were substantially complete within the phrase's common law meaning. And, particularly in the absence of any

SUPREME COURT
OF
NEVADA

(O) 1947A

12

allegations of intentional fraud, that period of repose is not subject to equitable tolling based on Somersett's prior control of the homeowner board. We therefore affirm the district court order granting summary judgment to respondents.

_____, J.
Pickering

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A

13